PETER FRANKLIN & another[1] *vs.* THOMAS W. ALBERT
& another.[2]

Norfolk. May 8, 1980. — October 9, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Medical Malpractice,* Statute of limitations. *Limitations, Statute of. Negligence,* Doctor. *Statute,* Construction.

A cause of action for medical malpractice does not accrue under G. L. c. 260, § 4, until a patient learns, or reasonably should have learned, that he has been harmed as a result of a defendant's conduct. [612]

CIVIL ACTION commenced in the Superior Court Department on July 27, 1978.

The case was heard by *Rutledge,* J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Michael E. Mone (Patricia L. Kelly* with him) for the plaintiffs.

*Philander S. Ratzkoff (Nancy A. Serventi* with him) for the defendants.

*Wayne A. Budd, Paul R. Sugarman, Neil Sugarman & Steven L. Hoffman,* for the Massachusetts Bar Association, amicus curiae, submitted a brief.

*Walter L. Landergan, Jr., Edwin J. Carr, Michael T. Gengler, Gerald V. May, Jr., & Carol R. Kirchick,* for the Massachusetts Medical Society, amicus curiae, submitted a brief.

HENNESSEY, C. J.   This is one of two similar cases decided today seeking reconsideration of the holding in *Pasquale* v.

---

[1] Joan Franklin, wife of Peter Franklin.

[2] Massachusetts General Hospital. Allegations as to the hospital's negligence are general in nature and not material to our discussion here.

*Chandler,* 350 Mass. 450 (1966), that under the Massachusetts statute of limitations for medical malpractice [3] a cause of action "accrues" at the time of the act of malpractice, "'and not when the actual damage results or is ascertained.'" *Id.* at 456, quoting and reaffirming *Capucci* v. *Barone,* 266 Mass. 578, 581 (1929).

It is the court's present opinion that *Pasquale* placed undue emphasis on legislative history in its refusal to examine the injustice of a rule that can deprive an injured plaintiff of any remedy even before he knows he has suffered harm. We now overrule the decisions in *Pasquale* and *Capucci* and hold that a cause of action for medical malpractice does not "accrue" under G. L. c. 260, § 4, until a patient learns, or reasonably should have learned, that he has been harmed as a result of a defendant's conduct.

The plaintiffs Peter Franklin and his wife brought an action against the defendants on July 27, 1978, claiming damages as a result of alleged medical malpractice. The plaintiffs' complaint and affidavit allege the following facts. Peter Franklin had complained of intermittent chest pain upon his admission to Massachusetts General Hospital in January, 1974, for oral surgery. A chest X-ray was ordered. Two days later, Franklin was discharged from the hospital by an unknown resident doctor, later found to be Dr. Thomas W. Albert. In his discharge summary, Dr. Albert noted that the X-ray taken of Franklin's chest was normal. In fact, the X-ray was not normal. The report prepared by the hospital's X-ray department noted "apparent left superior mediastinal widening" and concluded that "[f]urther evaluation of this is recommended." Nonetheless, Franklin was discharged without any further examination

---

[3] General Laws c. 260, § 4, as amended through St. 1973, c. 777, § 3, reads in relevant part: "Actions of contract or tort for malpractice, error or mistake against physicians, surgeons, . . . hospitals . . . shall be commenced only within three years next after the cause of action accrues." A related statute of limitations, G. L. c. 231, § 60D, applying exclusively to claims of minors, similarly uses the word "accrues." A constitutional challenge to the latter statute was rejected in *Cioffi* v. *Guenther,* 374 Mass. 1, 3-4 (1977).

and without any knowledge on his part of the abnormal findings noted in the X-ray report.

In January of 1978, after experiencing flu-like symptoms, Franklin returned to Massachusetts General Hospital for a chest X-ray. That X-ray disclosed a malignancy, which was diagnosed as Hodgkin's disease. The plaintiffs allege that the "apparent left superior mediastinal widening" noted on the 1974 X-ray was an early manifestation of Hodgkin's disease and that the defendants' failure to report correctly and to evaluate further this finding was medical malpractice.

The plaintiffs filed suit approximately six months after their discovery of the findings of the original X-ray and four and half years after the alleged act of malpractice. Both defendants in their answers pleaded the three-year statute of limitations, G. L. c. 260, § 4,[4] as an affirmative defense, and then moved for summary judgment on the same ground. On September 19, 1979, a medical malpractice tribunal, convened in accordance with G. L. c. 231, § 60B, unanimously found that the evidence submitted to it, if properly substantiated, was sufficient to raise a legitimate question of liability appropriate for judicial inquiry. On October 3, 1979, a judge of the Superior Court allowed the defendants' motions for summary judgment on the basis of the statute of limitations. The plaintiffs appealed, and their application for direct appellate review was allowed by this court.

In its initial interpretation of the statute of limitations for malpractice, in a case involving a gauze sponge left in the plaintiff's abdomen during an operation, this court held that the cause of action accrued on the date of the operation. *Capucci* v. *Barone*, 266 Mass. 578, 581 (1929).[5] The court reasoned that "[a]ny act of misconduct or negligence

---

[4] See note 3, *supra*.

[5] General Laws c. 260, § 4, then provided that actions of medical malpractice must be "commenced only within two years next after the cause of action accrues."

on [the] part [of the doctor] in the service undertaken was a breach of his contract, which gave rise to a right of action in contract or tort, and the statutory period began to run at that time, and not when the actual damage results or is ascertained." *Id.* No suggestion was offered as to how an injured plaintiff could pursue his theoretical right of action before he had any chance to discover he had been injured.

The *Capucci* doctrine was reaffirmed in 1966 in *Pasquale v. Chandler,* 350 Mass. 450 (1966), a case involving similar facts.[6] The *Pasquale* court noted "we would be disposed to reconsider the question" but for "recent legislation." 350 Mass. at 456. The "recent legislation" consisted primarily of the amendment of G. L. c. 260, § 4, by St. 1965, c. 302, relating solely to actions for medical malpractice. The 1965 amendment increased the limitation period from two years to three years, at a time when other actions for personal injuries were subject to a two-year limitation period. See G. L. c. 260, §§ 2, 2A, 4. In view of the fact that the 1965 amendment was substituted in the course of an enactment for a bill proposing a "discovery rule,"[7] the *Pasquale* court thought the Legislature had reaffirmed the *Capucci* doctrine that the cause of action accrued at the time of the act of malpractice, and not at the time of discovery of the injury. 350 Mass. at 458.

The defendants' principal contention is that *Pasquale* forecloses further judicial consideration of the proper time of accrual of a medical malpractice claim. We disagree.

It can be argued in support of the result in *Pasquale* that, at the time of the 1965 amendment increasing to three years the limitation period for medical malpractice cases only,

---

[6] In *Pasquale,* a Kelly clamp, a scissors-like instrument about eight inches long, had been left in the plaintiff's abdomen during an operation and was not discovered until almost six years later. 350 Mass. at 452-454.

[7] House Doc. No. 530 (1965) would have provided that malpractice actions "be commenced only within two years next after the injured party has knowledge of the facts which give rise to a cause of action but only within five years after the cause of action accrues." See *Pasquale v. Chandler,* 350 Mass. at 456-457.

"the Legislature put medical malpractice cases in a distinct category." *Hendrickson* v. *Sears,* 365 Mass. 83, 87-88 (1974). In 1973, however, the Legislature apparently abolished this "distinct category." By St. 1973, c. 777, §§ 1, 3, the Legislature amended both §§ 2A and 4 of G. L. c. 260 to provide a uniform three-year limitation period not only for medical malpractice cases, but for *all* personal injury claims. Assuming that there was in 1965 an expression of legislative policy separating medical malpractice cases from others presenting similar problems, a strong argument can be made that the Legislature abrogated that policy by its 1973 action, and, therefore, that the court, freed from the restraint imposed on itself in *Pasquale,* may consider the merits of a discovery rule versus a "time of the negligent act" rule. See *Hendrickson* v. *Sears,* 365 Mass. 83, 88 (1974) (following a discovery rule for cases of legal malpractice); *Cannon* v. *Sears, Roebuck & Co.,* 374 Mass. 739, 742-743 (1978) (holding that a cause of action in products liability cases accrues at the time of the injury, rather than at the time of the negligent manufacture or sale).

Even if we do not accept this line of reasoning, we would overrule *Pasquale.* The *Pasquale* holding was based primarily on an interpretation of the Legislature's failure to enact a proposed discovery rule as constituting legislative disapproval of a discovery rule, sufficient to preclude any contrary judicial interpretation of the word "accrues" in G. L. c. 260, § 4. 350 Mass. at 456-458. We decline to place so much significance on this legislative history. In answering a similar contention that the legislative failure to pass a discovery bill showed the Legislature desired no change, the Supreme Court of Oregon remarked: "The fallacy in this argument is that no one knows why the legislature did not pass the proposed measures. . . . Did the legislature fail to pass the measures because it was satisfied with the [former *Capucci*-type case] interpretations of the statute or because it was not in favor of [the] overall limitation [placed in the proposed discovery rule], or because it disliked the length of the overall limitation? The practicalities of the legislative

process furnish many reasons for the lack of success of a measure other than legislative dislike for the principle involved in the legislation." *Berry* v. *Branner*, 245 Or. 307, 311 (1966). See H. Hart & A. Sacks, The Legal Process: Basic Problems in the Making and Application of Law 1395-1396 (tent. ed. 1958), which lists a number of reasons legislators may have for opposing a particular bill, including, as may be true in the area under discussion here, the "[b]elief that the matter should be left to be handled by the normal processes of judicial development of decisional law, including the overruling of outstanding decisions to the extent that the sound growth of the law requires."

Similarly, we think the consideration and rejection of various proposed measures since *Pasquale* should not control our decision today. We recognize that the Legislature, in 1967,[8] 1975,[9] and 1979[10] has rejected bills that would have amended G. L. c. 260, § 4, to include some form of

---

[8] On May 3, 1967, the Senate refused to advance House Doc. No. 952, providing for an open-ended discovery rule, to a third reading, which action is equivalent to a rejection of the bill. 1967 Senate Journal 1049.

[9] On April 14, 1975, House Doc. No. 2120 was introduced, providing that an action for medical malpractice "must be brought within two years from the date of the incident giving rise to the action or within one year of the date of discovery, whichever occurs last, but in no event later than four years from the date of the incident." The House accepted a report by the Judiciary Committee that this bill ought not to pass. 1975 House Journal 1419-1420.

[10] 1979 Senate Doc. No. 1832 would have provided for an open-ended three-year period within which an action for medical malpractice could be commenced "after the malpractice, error or mistake has been discovered or reasonably should have been discovered." The Committee on the Judiciary reported to the Senate that this bill ought not to pass. 1979 Senate Journal 714. The Senate accepted the report. *Id.* at 733. A second 1979 bill, House Doc. No. 5134, was reported favorably to the Senate by the Committee on the Judiciary together with Senate Doc. No. 894, and the combined bill was designated Senate Doc. No. 894. 1979 Senate Journal 674. House Doc. No. 5134 would have amended G. L. c. 260, § 4, to permit medical malpractice actions to be commenced "within three years next after the cause of action accrues, or within three years next after the cause of action reasonably should have been discovered, whichever is later."

discovery rule for medical malpractice cases.[11]   The defendants urge us to construe these rejected bills as constituting such definite proof of legislative disapproval of a discovery rule as to be binding in this court.   However, we do not read the failure to enact these bills as necessarily disapproving, in principle, a discovery rule.   Further, we reject the suggestion that defeated legislative proposals have the power to disable us, in a proper case, from considering the questions presented by such proposals and from abandoning prior conclusions that now seem inappropriate.   See e.g., *Girouard* v. *United States,* 328 U.S. 61, 69-70 (1946); *Berry* v. *Branner, supra* at 313; H. Hart & A. Sacks, *supra,* 1394-1397.   Such a restriction of the judicial function is especially invalid when an interpretation of a statute of limitations is at issue.   Absent explicit legislative direction, the determination of when a cause of action accrues, causing the statute of limitations to run, has long been the product of judicial interpretation in this Commonwealth.   See *Cannon* v. *Sears, Roebuck & Co.,* 374 Mass. 739, 740 (1978); *Hendrickson* v. *Sears,* 365 Mass. 83, 88-89 (1974). It was this court, not the Legislature, that decided in 1929 that a malpractice claim accrued when the physician performed the negligent act.   *Capucci* v. ₒ*Barone,* 266 Mass. 578, 581 (1929).   This court is not barred from departing from that rule if persuaded that the values in so doing outweigh the values underlying stare decisis.   See *Lewis* v. *Lewis,* 370 Mass. 619, 628-629 (1976).

The *Pasquale* and *Capucci* opinions nowhere elucidated or sought to balance the harm of being deprived of a remedy versus the harm of being sued.   Both decisions implicitly placed the policy of promoting repose above all other considerations, without, however, analyzing the purposes of statutes of limitations.   Historically, common law tort actions could be brought as long as either party lived.   See

---

[11] Additional similar bills introduced in 1968 and 1980 failed to receive more than preliminary attention.  See House Doc. Nos. 2366 and 2008; 1968 House Journal 1160; House Doc. No. 2455; 1980 House Journal 328.

Developments in the Law — Statutes of Limitations, 63 Harv. L. Rev. 1177, 1177-1178 (1950). The primary purpose of the first statute of limitations, 21 Jac. 1, c. 16 (1623) (the 1623 Limitation Act), was to keep out inconsequential claims. *Id.* at 1178. The United States Supreme Court has long recognized the broader social importance of statutes of limitations, deeming them "vital to the welfare of society. . . . They promote repose by giving security and stability to human affairs." *Wood* v. *Carpenter*, 101 U.S. 135, 139 (1879). In addition to the policy of affording repose, limitation statutes encourage plaintiffs to bring actions within prescribed deadlines when evidence is fresh and available. *United States* v. *Kubrick*, 444 U.S. 111 (1979), and cases cited. They "stimulate to activity and punish negligence." *Wood* v. *Carpenter, supra.*

The manifest injustice of the *Capucci* doctrine is that, rather than punishing negligent delay by the plaintiff, it punishes "blameless ignorance" by holding a medical malpractice action time-barred before the plaintiff reasonably could know of the harm he has suffered. Cf. *Urie* v. *Thompson*, 337 U.S. 163, 169-170 (1949), holding that a claim under the Federal Employers' Liability Act did not accrue until the plaintiff's injury manifested itself, and noting that a contrary holding could not be "reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights." This court has held in various contexts that "a cause of action accrues on the happening of an event likely to put the plaintiff on notice." *Hendrickson* v. *Sears*, 365 Mass. 83, 89-90 (1974), and cases cited. In *Hendrickson*, we held that a client's cause of action for legal malpractice in the certification of title does not accrue "until the misrepresentation is discovered or should reasonably have been discovered." *Id.* at 91. In *Friedman* v. *Jablonski*, 371 Mass. 482, 485-486 (1976), we applied a similar discovery rule to a cause of action for deceit in the sale of real estate. In *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 742-743

(1978), we held that a cause of action in products liability cases accrues at the time a plaintiff is injured by a product, not at the time, often years earlier, that the product is either manufactured or sold. These cases all recognize the principle that a plaintiff should be put on notice before his claim is barred. We now extend this principle to medical malpractice actions and hold that these causes of action accrue when the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct. In so doing, we bring this Commonwealth in line with the vast majority of States that have adopted some form of discovery rule. See Note, 38 Mont. L. Rev. 399, 401 n.22 (1977); Annot., 80 A.L.R.2d 368, § 7 (b) (1961), and L.C.S. 167 (1979), for a collection of statutes and cases.

The defendants contend that sound policy dictates rejection of a discovery rule. A discovery rule, they claim, will fan the medical malpractice crisis by resulting in more claims that will in turn contribute to higher insurance premiums and, finally, to curtailment of health care services. Although these are relevant considerations, they are better addressed to the Legislature, which is, of course, free to make a contrary reconciliation of the conflicting policies involved or to place an outside limit on the time for bringing a malpractice action.[12] As far as increased claims are concerned, however, we note that the Legislature has provided a rational means of weeding out frivolous claims through the medical malpractice screening procedure established by St. 1975, c. 362. Moreover, even with the adoption of a discovery rule, the plaintiff bears the burden of proving facts taking his case outside the impact of the three-year statute of limitations. *Friedman* v. *Jablonski,* 371 Mass. 482, 487 (1976).

---

[12] For example, in some States whose Supreme Courts have overruled their prior cases and favored a discovery rule, the Legislatures have recognized the justice of such a rule and have incorporated it into their statutes of limitation, but with the addition of an outer limit in which the action must be brought. See, e.g., Tenn. Code. Ann. §§ 28-304, 23-3415, as amended by 1975 Tenn. Pub. Acts, c. 299, § 15; Wash. Rev. Code Ann. § 4.16.350; amended by 1975-1976 Wash. Laws. 2d Exec. Session, c. 56, § 1.

The defendants argue further that a discovery rule should be limited to malpractice claims based on the presence of a foreign object in the patient's body, such as the clamp in *Pasquale* and the sponge in *Capucci*. As no foreign object is involved here, this case is inappropriate for constructing such a rule. We observe, however, the theoretical difficulty of justifying the applicability of the discovery rule to one kind of malpractice and not to another, as the principle underlying the discovery rule applies whether the malpractice consists of leaving a foreign object in the patient's body or of other negligence in diagnosis or treatment of the patient. See *Lipsky* v. *Michael Reese Hosp.*, 46 Ill. 2d 32, 40-41 (1970); *Frohs* v. *Greene*, 253 Or. 1, 3-4 (1969).

In the case before us, the plaintiff Peter Franklin's allegations that when he left the hospital he was unaware of the X-ray findings indicating his potentially serious condition, and that he remained unaware of those findings until four and one-half years later, are sufficient to withstand summary judgment on the question of the statute of limitations. The plaintiff filed his complaint approximately six months after his discovery of the X-ray findings. We cannot say, as a matter of law, that the plaintiff reasonably should have learned any earlier of the harm to him which presumably occurred as soon as he was left unnecessarily in ignorance as a result of the defendants' conduct. Cf. *Friedman* v. *Jablonski, supra* at 487 (reversing allowance of defendants' motion to dismiss action for deceit in sale of real estate, because complaint did not show, as a matter of law, that plaintiffs reasonably could have known of misrepresentation at time of sale). Although the trial judge here correctly granted summary judgment, confronted as he was by our rigid application of the statute of limitations in *Pasquale*, we reverse and remand the case for further proceedings consistent with this opinion. Our rulings here do not, of course, preclude reliance by the defendants upon the statute of limitations as appropriate in further proceedings, including presentation of evidence as to the facts relevant to that defense.

*So ordered.*