Brenda PAYTON, Joanne DERBORT and Kathleen MURPHY, suing on behalf of themselves and, with respect to certain relief, on behalf of all other women residing in Mass. who are similarly situated.
vs.
ABBOTT LABS, et al

Civ. A. No. 76-1514-S

United States District Court
D. Massachusetts

January 15, 1981

David Rosenberg, Jeanne Baker, David J. Fine, Harvey A. Silverglate, Thomas G. Shapiro, Nancy Gertner for the plaintiffs. Walter G. Murphy, Pamela J. Basamania, Marshall Simonds for the defendants.

## MEMORANDUM OF CERTIFICATION

**SKINNER, D.J.** Pending before me are the requests of the parties to certify certain legal issues to the Supreme Judicial Court of Massachusetts. The parties are in disagreement as to the questions to be presented, the form thereof, whether agreed statements of fact are to accompany the questions and the standards to be applied in certifying questions of law. It is agreed, however, that the law of Massachusetts is the relevant substantive law.

The parties have submitted a mountain of briefs and epistolary exhortations, purported statements of agreed fact and challenges thereto. I conclude that the generation of a useful set of agreed facts prior to trial is probably impossible, or if possible would consume an inefficient amount of time and energy. Accordingly, questions will be certified as abstract propositions of law in the context of a general statement of plaintiffs' claims, and if the Supreme Judicial Court desires supplementation of the record the parties can respond to that challenge in whatever form it arises.

As to the standards to be applied in certifying questions, it is clear that certification is not properly employed as a means to persuade the state court to change its announced law. It may not be used to create new law to replace existing law. Cantwell

v. University of Massachusetts, 551 F.2d 879 (1st Cir. 1977). It is one of the principal purposes of the certification procedure, however, to give the state court a chance to resolve a legal issue never before addressed by it, and in that sense to create or find new law. Otherwise, the federal court is left to guess what the state law is, and perhaps in fact to engraft upon the state's jurisprudence a principle of law which the state court might find repugnant to its perception of sound policy. Where the issue of state law has never been addressed, it is clear to me that the opinions of our Court of Appeals mandate certification at some stage of the federal proceeding.

I have come to the following conclusions concerning the issues certified for resolution in the class action. In some cases, subsidiary questions may be certified along with the principal issue.

1 and 2. The first and second issues certified for class resolution are related because, for those plaintiffs who have developed no objective symptoms, fear and anguish result only from the alleged statistical increase in the likelihood that exposure to DES will cause fatal cancer or other serious injury to the reproductive system. It would appear that the question of whether negligently caused emotional distress without bodily injury is compensable is still open in Massachusetts. Dziokonski v. Babineau, 375 Mass. 555, 380 N.E. 2d 1295, 1298, n. 6 and 7 (1978). These questions should be certified in a combined form. Some measurable increase in the statistical likelihood of disease may result from a number of substances, such as meat, butter, and tobacco. Accordingly, I shall certify a subsidiary question, assuming that the principal question is answered in favor of plaintiffs: What level of statistical increase is a sufficient cause for compensable anxiety?

3. Whether, if it is shown that a plaintiff would not have been born except for DES, she can recover for injury resulting from exposure to DES is a question never addressed by the Massachusetts courts. It should be certified. A subsidiary question emerges. If the answer to the above is affirmative, is the fact that without DES the plaintiff would not have been born a matter to be considered in mitigation of damages?

4. The plaintiffs allege that they have been injured in consequence of the ingestion of DES by their mothers during pregnancy and the transmittal of the drug to them in utero, which injury was not apparent until after birth. Is the rule stated in Torigian v. Watertown News Co., Inc., 352 Mass. 446 (1967), applicable to this case? If so, is it applicable to those plaintiffs whose mothers ingested DES before the date when that case was decided? These questions should be certified.

5. The issue of negligence is one of fact and will not be certified.

6. Strict liability in tort for a merely defective product does not exist under the law of Massachusetts and never has. Swartz v. General Motors Corporation, 375 Mass. 628, 378 N.E.2d 61 (1978). I will not certify the question because it has been decided. Upon the filing of an appropriate motion, so much of the complaint as alleges strict liability in tort will be dismissed.

7. The question of the defendants having tested the long-range effects of DES on the plaintiffs without their consent seems to me to break down into two legal categories: (1) a deliberate intentional use of a potentially dangerous drug for testing purposes, i.e., an assault and battery, and (2) negligent failure to warn, thus depriving plaintiffs' mothers of the opportunity to make an informed choice. Both of these issues appear to be primarily ones of fact to be determined under well established principles of Massachusetts law. The issue will not be certified.

8. The question of the existence of a private right of action under the federal Food, Drug and Cosmetic Act, 26 U.S.C. secs. 301, 331 and 352 is obviously a question of federal law and will not be certified.

9 and 10. These issues of joint enterprise and conspiracy are primarily ones of fact under well established principles of Massachusetts law, and will not be certified.

11. The Massachusetts court has not declared itself on the subject of collective liability in the absence of proof of conspiracy or joint enterprise. Various rules have been applied in other jurisdictions to give plain-

tiffs a chance of recovery when they cannot determine which of several independently negligent defendants caused the injury complained of. Some courts have resolved the problem by shifting the burden of proof, or in the case of product liability, assessing damages in the proportion of each defendant's share of the appropriate market. A question should be certified in the broadest possible form to enable the Supreme Judicial Court to shape the nature and form of remedy, if any, available to a plaintiff who cannot identify which of a group of defendants is responsible for her alleged injury. One of the subsidiary issues is the effect of naming as defendants fewer than all the possible defendants. What rights of contribution do the named defendants have against un-named possible tort-feasors? These are all clearly questions which must be answered by the Massachusetts court.

12. The Supreme Judicial Court has recently adopted a rule that the running of the statute of limitations in medical malpractice cases commences with the discovery of the injury. Franklin v. Albert, 1980 Mass. Adv. Sheet 2187, 411 N.E.2d 458 (1980). In product liability cases, the running of the statutory period commences with the date of injury rather than with the date of sale. Cannon v. Sears, Roebuck & Co., 374 Mass. 739, 374 N.E.2d 582 (1978). In that case the injury occurred when a ladder collapsed. The court concluded that it did not need to consider the extension of a discovery rule in those circumstances. Id. at 374 N.E.2d 585. In Hendrickson v. Sears, 365 Mass. 83, 310 N.E.2d 131 (1974), the court held the statutory period to commence upon discovery on an action of tort for legal malpractice, and in Friedman v. Jablonski, 371 Mass. 482, 358 N.E.2d 994 (1976), the same rule was applied in a tort action for deceit. In Hendrickson v. Sears, supra, the Court endorsed the principle "That limitation statutes should apply equally to similar facts regardless of the form of proceeding . . ." 365 Mass. at 85; 310 N.E.2d at 132.

The Supreme Judicial Court has in these cases evidenced a clear disinclination to punish "blameless ignorance," Franklin,

supra, 411 N.E.2d at 463, by barring an action before the plaintiff knew or had reason to know he or she had a claim. While it could be argued in this case that the injury recurred when the plaintiffs were in utero, I think it highly unlikely that the Supreme Judicial Court would charge the plaintiffs with learning within two or three years of their majority of circumstances which occurred while they were as yet unborn. I conclude that the Court would apply that would be in practical effect a discovery rule, even if it were case in terms of defining "injury" and "damage".[1]

The application of such a rule is relatively simple in the case of plaintiffs who allege specific physical symptoms allegedly caused by DES. As to those plaintiffs who claim an increased level of anxiety, the application of a limitation period has greater practical difficulty. The Supreme Judicial Court's response to the questions certified under issues 1 and 2 above may assist in resolving that difficulty. In any case, it seems clear that in order to trigger the period of limitation, a plaintiff would have to have been put on actual notice of (1) the ingestion of DES by her mother at a critical time and (2) the potential hazards allegedly resulting from DES.

This action was commenced on April 20, 1976. Massachusetts General Laws, c. 260, sec. 2A, the applicable statute, was amended to increase the period of limitations from two years to three years, effective January 1, 1974. The amending act provided that the new period should "apply to causes of action arising on and after said date." St. 1973, c. 777, sec. 4. As discussed above, the cause of action "arose" for purposes of this statute upon discovery of the injury. Accordingly, the action was timely brought with respect to injuries which were discovered, or ought to have been discovered, on and after January 1, 1974. Claims

---

[1] Even though the discovery question was left open in Cannon, the Court approved a parallel approach in tort and warranty cases. The warranty statute, G.L. c. 106, § 2-318 begins to run "after the date the injury and damage occurs." Even if the injury occurred in utero, no actual damage would occur until physical symptoms or the requisite level of anxiety became manifest.

arising prior to that date are barred. There is no need to certify the question.

13. The statute of limitations for breach of warranty is contained in G.L. c. 106, sec. 2-318:

> All actions under this section shall be commenced within three years next after the date the injury and damage occurs.

The period of limitation was changed from two to three years and the word "damage" was added by an amendment which became effective July 24, 1974. St. 1974, c. 153, approved April 25, 1974. (Ordinarily, Massachusetts statutes become effective ninety days after approval, in the absence of an emergency preamble, unless the statute is not subject to referendum. Constitution of Massachusetts, Amend. Art. 48 Ref., Pt. 1.) There was no provision limiting the application of the amendment to causes of action arising after that date, although there had been such provisions in previous amending statutes.

In the absence of statutory provision, the rule governing the application of changes in periods of limitation:

> It is well settled that it is competent for the legislature to change statutes prescribing a limitation to actions, and that the one in force at the time of suit brought is applicable to the cause of action. The only restriction on the exercise of this power is, that the legislature cannot remove a bar or limitation which has already become complete, and that no new limitation shall be made to take effect on existing claims, without allowing a reasonable time for parties to bring actions before their claims are absolutely barred by a new enactment. [Citations].

Bigelow v. Bemis, 2 Allen [84 Mass. 496, 497 (1861)]. The right of action for breach of warranty against a manufacturer in the absence of privity of contract was first created in Massachusetts by an amendment to G.L. c. 102, sec. 2-318, which became effective ninety days after approval, i.e., on November 16, 1971. St. 1971, c. 670, sec. 1, approved August 18, 1971. Section 2 of the same act made the amendment applicable to sales made on or after the effective date. The same amendment imposed a two-year statute of limitation.

Consequently, when the three-year statute became effective on July 24, 1974, all causes of action accruing prior to July 24, 1974, all causes of action accruing prior to July 24, 1972 were barred and could not be revived. All causes of action arising after July 24, 1972 were subject to the three year statute. As of April 20, 1976, causes of action arising prior to April 20, 1973 were barred, and those arising on that date and thereafter survived.

All of the above discussion is probably academic. As noted, no cause of action for breach of warranty absent priority existed prior to November 16, 1971, and then it applied only to sales made thereafter. A plaintiff who was injured as a result of a sale of DES made after that date was by hypothesis in utero after that date. She would not yet have attained majority, and the statute of limitation would have been tolled in any event.

Defendants claim that they stopped selling DES for use by pregnant women some time in 1971. It may be an appropriate subject for a motion for partial summary judgment to dispose of warranties based on sales prior to November 16, 1971, and, if there were no sales of DES thereafter for use in pregnancies, to dispose of the whole subject of warranties.

In any case, the Massachusetts law may be derived from existing authority. I see no need to certify any question regarding issue No. 13.

A proposed form of questions in line with the foregoing is annexed. Objections related to form, and not repetitive of arguments already submitted may be filed within seven days. I will then decide if any further hearing will be helpful.

Walter Jay Skinner
U.S. Dist. Judge

## CERTIFICATION OF QUESTIONS OF LAW

In the above captioned class action the plaintiffs allege inter alia the following facts, which give rise to determinative questions of law as to which it appears there is

no controlling precedent in the decisions of your Honorable Court:

The plaintiffs are all females whose mothers ingested a drug called diethylstilbestrol (hereinafter DES) while pregnant with the plaintiffs. DES was marketed by the defendants as a preventative for miscarriages, and was widely prescribed by physicians. DES is transmitted to the fetus, and has been identified as the sole cause of a relatively rare but extremely malignant cancer called clear-cell adenocarcinoma which attacks the reproductive organs of the female children of mothers who have ingested DES. DES has also been identified as one of the causes of a more common benign cell change in the female children's reproductive organs known as adenosis. The emergence of a clear-cell adenocarcinoma is usually preceded by adenosis. The only corrective for clear-cell adenocarcinoma is timely radical surgery; if surgery is not successful the disease is likely to be fatal. Adenosis may be corrected by cauterization or in some cases by surgery.

Many of the plaintiffs have no symptoms of either disease. As a result of their mothers' ingestion of DES, there is a statistically greater likelihood (the level of which is disputed) that these plaintiffs will contract adenosis and a smaller statistical likelihood that they will contract clear-cell adenocarcinoma. They are anxious and emotionally upset by these possibilities. Some of the plaintiffs, on the advice of their physicians, are submitting to periodic medical examinations of the cervix and vagina so that symptoms of adenosis or clear-cell adenocarcinoma will be detected as early as possible, thus increasing the chance of successful treatment. These examinations are expensive and traumatic.

Among the various theories of liability asserted by the plaintiffs are that the defendants were negligent in marketing DES as a miscarriage preventative without adequate testing and without appropriate warnings.

DES was manufactured according to the same formula by all of the defendants and was marketed under its generic description. The products of the various defendants were interchangeable and were sold interchangeably by pharmacists, a fact known to the defendants. Most, if not all, of the plaintiffs are unable to identify the specific manufacturer of the DES ingested by their mothers. Pharmaceutical companies other than the named defendants also manufactured and marketed DES under its generic description, and may have supplied some of the DES ingested by the plaintiffs' mothers. Neither the plaintiffs nor the defendants will be able to identify whose product was ingested by which mothers. Furthermore, different defendants marketed DES at different times and under different circumstances which may bear on their negligence.

Plaintiffs have alleged two bases for recovery against all the defendants by all the plaintiffs: (1) conspiracy or joint enterprise, and (2) "alternative liability." "Alternative liability" is a term used to describe a theory of recovery adopted in some jurisdictions where there is not a joint tort, that is, where the tort was committed by only one of several possible tort feasors, but there is no way to determine which one.[1] Different jurisdictions have developed different versions of this theory of liability with respect to the allocation of damages, the necessity of joining all possible tortfeasors as defendants, shifting the burden of proof to a defendant to establish the impossibility of that defendant's responsibility, and right of contribution among defendants and against possible tort-feasors who are parties. As far as the undersigned can determine, your Honorable Court has not addressed a claim of this kind in any form. While such a theory has never been recognized, it has never been rejected by a Massachusetts court.

While the plaintiffs claim that DES was not efficacious in preventing miscarriages, the defendants claim that it was. If the evidence supports the defendants' claim the jury might be warranted in concluding that a particular plaintiff probably would not have been born had it not been for her

---

[1] A variant of this theory is sometimes referred to as "enterprise liability." In the leading case employing this term the defendants had delegated the formulation of safety standards to a trade association.

mother's ingestion of DES.

The parties and the undersigned agree that in this diversity action the law of Massachusetts is the controlling law.

I certify the following questions of Massachusetts law which may be determinative of various aspects of this case and as to which it appears to me that there is no controlling precedent in the decisions of your Honorable Court.

1. Does Massachusetts recognize a right of action for emotional stress and anxiety caused by the negligence of a defendant, in the absence of any evidence of physical harm, where such emotional stress and anxiety are the result of an increased statistical likelihood the plaintiff will suffer serious disease in the future?

1A. If the answer to question 1 is affirmative, is there a minimum statistical level of likelihood of future disease which is necessary before the resulting anxiety is compensable in an action for negligence?

1B. If the answer to question 1A is affirmative, is the minimum statistical level a question of law for the court or a question of fact under all the circumstances of the case?

2. If the trier of fact concludes that a plaintiff would probably not have been born except for the mother's ingestion of DES, is that plaintiff barred from recovery because of physical or emotional damage suffered as a result of her mother's ingestion of DES?

2A. If the answer to question 2 is negative, would such conclusion be a factor to be considered in mitigation of damages?

3. Does Massachusetts recognize a right of action for injury to a plaintiff in utero resulting from ingestion of a drug by her mother?

3A. If the answer to question 3 is affirmative, is such a right of action available to a plaintiff whose mother ingested the drug prior to your Honorable Court's decision in Torigian v. Watertown News Co., Inc., 352 Mass. 446 (1967), assuming that it is not established that the fetus was probably viable at the time of injury?

3B. If the answer to question 3 is affirmative, is such right of action available to a plaintiff whose mother ingested the drug prior to your Honorable Court's decision in Keyes v. Construction Services, Inc., 340 Mass. 633 (1960), even if it is established that the fetus was probably viable at the time of injury?

4. Assuming that the evidence does not warrant a conclusion that the defendants conspired together, or engaged in concerted action, or established safety standards through a trade association, may the defendant manufacturers, who probably supplied a substantial proportion, but not necessarily all, of the DES ingested by the mothers of the plaintiff class, be held liable to members of the plaintiff class when neither plaintiffs nor defendants can identify which manufacturer's DES was ingested by which mothers?

4A. If the answer to question 4 is affirmative, what are the incidents of such liability with respect to allocation of damages among defendants, defenses available to defendants, allocation of the burden of proof, rights of contribution among defendants and rights of contribution by named defendants against un-named pharmaceutical manufacturers who may have supplied some of the DES ingested by the plaintiffs' mothers?

Walter Jay Skinner
United States District Judge