Titus MACHARIA, as legal guardian of
David Macharia, Leonara Macharia,
and D.S.M., Plaintiffs,

v.

CITY OF REVERE, Terence Reardon,
John Nelson, Robert Impemba, Daryle
Lamonica, Louis Larosa, Patrick Dus-
seault, John Goodwin, Cambridge
Health Alliance, Phyllis Chen, Lynn
Murphy, AMN Healthcare, Inc., and
John Doe, Defendants.

Civil Action No. 2009–10391–RBC.[1]

United States District Court,
D. Massachusetts.

March 26, 2012.

---

**1.** On October 28, 2009, with the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Austin J. Freeley, Freeley & Finn, Boston, MA, for Plaintiffs.

Ira H. Zaleznik, Lawson & Weitzen, LLP, Pamela S. Gilman, Joshua B. Walls, Laura E. Bange, Taylor Duane Barton & Gilman, LLP, David A. Hilton, Stephanie M. Simmons, Morrison Mahoney LLP, Boston, MA, Daniel E. Doherty, City of Revere, Revere, MA, Andrew J. Gambaccini, Michael J. Akerson, Reardon, Joyce & Akerson PC, Worcester, MA, Edward D. McCarthy, Jason M. Morales, McCarthy, Bouley & Barry, PC, Cambridge, MA, for Defendants.

### MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT (# 109)

COLLINGS, United States Magistrate Judge.

### I. Introduction

On September 30, 2011, the Court dismissed plaintiffs' claims against defendant, Cambridge Health Alliance ("CHA") without prejudice: the Court concluded that CHA was a "public employer" within the meaning of the Massachusetts Tort Claims Act ("the Act"), Mass. Gen. L. ch. 258 §§ 1, 4, and that the plaintiffs had failed to comply with the Act's presentment-of-claim requirements. The plaintiffs now seek leave to amend their complaint in order to reassert their claims against CHA; they contend that they made proper presentment on February 23, 2011 to CHA's Chief Executive Officer. CHA opposes the motion for leave to amend on the grounds that the plaintiffs made presentment too late. Because amendment would be futile, the Court will deny the motion for leave to amend.

### II. Background

The following facts derive from the plaintiffs' proposed Fourth Amended Complaint (# 109–1). On February 23, 2007, David Macharia ("Macharia") was arrested by police officers in Revere, Massachusetts, following a report that he had assaulted his wife. (# 109–1 ¶ 18) On the evening of February 24, 2007, one of the officers on duty discovered Macharia lying on the floor in his cell. (# 109–1 ¶ 25) Macharia explained that he had " 'jumped off the bed and hurt his head.' " (# 109–1 ¶ 26) That evening, Macharia was taken by ambulance to the CHA d/b/a/ Whidden Memorial Hospital (hereafter, "Whidden" or "the hospital"), to receive treatment for an injury to his head. (# 109–1 ¶ 28) According to the ambulance report, Macharia had stated that he had wanted to kill himself. (# 109–1 ¶ 30)

At the emergency room, Lynn Murphy, a registered nurse (and a defendant in this action), indicated on her assessment form that Macharia had a past history of depression, anxiety and post-traumatic stress disorder and that he was taking prescription medications; that the " 'Reason for Visit' " was " 'SI' " or "suicidal ideation"; and that Macharia had " 'jumped off 1 ½ foot high pole and landed on head and back at jail.' " (# 109–1 ¶¶ 32–33) While at the hospital, Macharia was not seen by a psychiatrist, mental health counselor or physician to assess his mental condition. (# 109–1 ¶ 34) Also, while he was at Whidden, Macharia climbed onto a four-foot-high countertop, threw himself onto the floor and landed on his back. (# 109–1 ¶ 35)

Macharia was discharged at 5:00 a.m. on February 25, 2007 (# 109–1 ¶ 36) and re-

turned to the jail. At about 9:45 p.m., one of the officers on duty observed Macharia "lying on the floor with phlegm and French fries around his mouth." (# 109–1 ¶ 50) At 10:40 p.m., Macharia was taken to Massachusetts General Hospital, "in critical condition, suffering from an acute left subdural hematoma." (# 109–1 ¶ 53) Macharia continues to suffer from "permanent head injuries that will require intensive care at a specialized in patient nursing facility for the rest of his life." (# 109–1 ¶ 54)

### III. Discussion

#### A. Standard of Review

Fed.R.Civ.P. 15(a)(2) provides that before trial "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "[A] request to amend—especially a belated request—requires the court to examine the totality of the circumstances and to exercise its informed discretion in constructing a balance of pertinent considerations." *Palmer v. Champion Mortgage,* 465 F.3d 24, 30–31 (1 Cir., 2006). Leave to amend may be denied for several reasons, including "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." *United States ex rel. Gagne v. City of Worcester,* 565 F.3d 40, 48 (1 Cir., 2009).

Here, the defendant essentially opposes the motion to amend on futility grounds. "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R.Civ.P. 12(b)(6)." *Adorno v. Crowley Towing & Transp.,* 443 F.3d 122, 126 (1 Cir., 2006); *see also Hatch v. Dep't for Children, Youth and Their Families,* 274 F.3d 12, 19 (1 Cir., 2001); *Menard v. CSX*

*Transp., Inc.,* 840 F.Supp.2d 421, 427, No. 11–cv–30161–MAP, 2012 WL 13372, *5 (D.Mass., Jan. 3, 2012) ("An amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss.").

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain enough factual material to 'raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact.)' " *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1 Cir., 2011) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "If that factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). Thus, "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 29 (1 Cir., 2010) (Souter, J.).

Finally, the Court notes that an affirmative defense, such as a statute of limitations, "may be raised in a motion to dismiss under Federal Rule Civil Procedure 12(b)(6), provided that the facts establishing the defense are clear on the face of the plaintiff's pleadings. . . . Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to sketch a factual predicate that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate." *Trans–Spec Truck Service, Inc. v. Caterpillar Inc.,* 524 F.3d 315, 320 (1 Cir.) (alterations, internal quotation marks and citations omitted),

*cert. denied,* 555 U.S. 995, 129 S.Ct. 500, 172 L.Ed.2d 359 (2008).

### B. The Futility of Amendment

█ The Act requires a party claiming injury against a public employer to present "his claim in writing to the [defendant] within two years after the date upon which the cause of action arose." Mass. Gen. L. ch. 258 § 4. The plaintiffs presented their claims in writing to CHA on February 23, 2011, about four years after the events in question. Thus unless the plaintiffs can plausibly establish that their cause of action against CHA arose after February 23, 2009 (during the two-year period before presentment), presentment was untimely.

█ Under Massachusetts law, "a cause of action for medical malpractice accrues 'when the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct.'" *Riley v. Presnell,* 409 Mass. 239, 243, 565 N.E.2d 780, 784 (Mass., 1991) (quoting *Franklin v. Albert,* 381 Mass. 611, 619, 411 N.E.2d 458, 463 (Mass., 1980)). In other words, the limitations period for medical malpractice commences when a reasonably prudent person "reacting to any suspicious circumstances of which he might have been aware ... should have discovered that he had been harmed by his physician's treatment." *Malapanis v. Shirazi,* 21 Mass.App.Ct. 378, 383, 487 N.E.2d 533, 537 (Mass.App.Ct., 1986).

The gist of the plaintiffs' claim against CHA is that CHA and its staff "negligently and carelessly discharged David Macharia in a manner which resulted in his severe and permanent injuries." (# 109–1 ¶ I.1) They allege that "[d]espite the obvious risk of harm to himself, no one at the Cambridge Health Alliance arranged for David Macharia to be examined by a psychiatrist, mental health counselor or physician to assess and treat his mental condi-

tion." (# 109–1 ¶ 34) In short, they claim that Macharia received substandard care and that his injuries could have been prevented if the defendants had referred Macharia for a psychiatric evaluation before discharging him.

Based on the allegations of the complaint, the Court concludes that the plaintiffs failed to present their claims to CHA within the two-year period prescribed by the Act. The plaintiffs knew that Macharia had suffered injury on February 25, 2007. Macharia succeeded in harming himself within hours of his discharge from the hospital. Thus, the cause of action against CHA arose when the plaintiffs learned that Macharia had been treated and released by Whidden Hospital. At the latest, a causal connection would have been apparent as soon as the plaintiffs knew that Macharia had been treated at Whidden's emergency room and that Whidden had failed to order a psychiatric evaluation before releasing him. Because Macharia succeeded in harming himself within hours of his release from the hospital, the plaintiffs were aware of circumstances suspicious enough to trigger their obligation to investigate further. *See Fidler v. Eastman Kodak Co.,* 714 F.2d 192, 199 (1 Cir.1983) (Once on notice of the "likely cause ... the potential litigant has the duty to discover from the legal, scientific, and medical communities whether the theory of causation is supportable and whether it supports a legal claim. Thus on notice, his cause of action was no longer inherently unknowable.") (applying Massachusetts law).

The plaintiffs do not dispute that they knew before February 23, 2009 that Macharia had been treated at Whidden and that he had not received a psychiatric evaluation as part of his treatment. Instead, they contend that the cause of action against CHA arose on December 15, 2009. On this date, police officer Luis Larosa

was deposed and recounted the details of Macharia's attempt to harm himself while at Whidden. The plaintiffs contend that they could not have known of this incident at Whidden until they heard Larosa's deposition testimony. The plaintiffs assert that "[p]rior to December 15, 2009, Plaintiffs had only been in possession of CHA medical records indicating that Macharia was a patient 'feigning' injury.... There was no reasonable basis for Plaintiffs to conclude anything other than that Macharia was a malingerer, faking injury to avoid being sent back to jail." (# 113 at 2) The plaintiffs maintain that "there was nothing inherently suspicious about Macharia's discharge from the hospital" (# 113 at 9) until they learned about Macharia's attempt to harm himself while at the hospital.

The Court finds this argument unpersuasive. As noted, Macharia injured himself within hours of his discharge: that fact, coupled with the knowledge that Macharia had been treated at the hospital without receiving a psychiatric evaluation, renders the circumstances of his discharge manifestly suspicious. Macharia's attempt to harm himself at the hospital has no bearing on the question of when the plaintiffs knew or should have known of CHA's likely causal connection to the harm that Macharia suffered, and is unrelated to the plaintiff's theory of recovery. Whether the plaintiffs—or indeed, whether the defendants—thought that Macharia was feigning injury is immaterial: even if the medical records concluded that Macharia was only faking injury to avoid being sent back to jail, the plaintiffs patently had "a reasonable basis" to believe that Macharia was not feigning injury (despite the medical records), because he in fact succeeded in injuring himself.

Also, the plaintiffs' theory of liability is that competent medical professionals should have recognized that Macharia was at risk of self-harm despite any statements that Macharia himself made to the contrary while undergoing treatment at the hospital. This is the theory of liability set forth in the presentment letter itself:

> Mr. Macharia presented to Whidden Memorial Hospital with a known history of a depressive disorder and he had deliberately tried to injure himself while in custody at the Revere Police Station. Additionally, it was known that he had attempted suicide three months prior to his arrest and that he had a history of suicidal behavior and was taking psychiatric medications. Review of the Whidden Memorial Hospital record does not indicate that any psychiatric evaluation was considered or conducted. There is no indication that a safety assessment was conducted, despite his recent self inflicted injury, the past record of suicide attempt and the record indicating knowledge of his alleged self-injurious behaviors and statements of concern about return to police custody.

(# 113–1 at 5)

On this theory, the plaintiffs were obliged to investigate further when they learned that Macharia had been discharged without a psychiatric evaluation.

■ Finally, the allegations in the complaint focus exclusively on the quality of care that Macharia received and not on whether Whidden staff might have fraudulently concealed the nature of the treatment provided at the hospital. *Cf. Chace v. Curran,* 71 Mass.App.Ct. 258, 262–64, 881 N.E.2d 792, 795–97 (Mass.App.Ct., 2008) (noting distinction). In any event, if a party "is deemed to know the facts upon which [a] claim rests, there can be no fraudulent concealment." *See Malapanis,* 21 Mass.App.Ct. at 386 n. 8, 487 N.E.2d at 538 n. 8. So, the plaintiffs' argument that "the failure to document the incident of

self-harm suggests the possibility of concealment of this critical fact from the Plaintiffs" (# 113 at 8) does not alter the analysis.

In sum, the plaintiffs' assertion that a possible claim against CHA was "inherently unknowable" until they learned that Macharia had attempted to harm himself at the hospital is simply implausible. This is not a case in which the plaintiffs can plausibly contend that the injury here was "latent" (*see* # 113 at 6)—it was not—or that the facts establishing a causal link between the injury and its cause were undiscoverable—they were not.

### IV. Conclusion and Order

The presentment requirement under Mass. Gen. L. ch. 258, § 4, is a condition precedent to recovery against a public employer under the Act. Because the claims against CHA accrued more than two years before the date on which the plaintiffs made presentment to CHA, any amendment to the complaint would be futile as a matter of law. It is ORDERED that the Motion for Leave to File a Fourth Amended Complaint (# 109) be, and the same hereby is, DENIED.