Cordy, J.
(dissenting in part). The court’s decision today fails to consider several factors that strongly militate against adopting a continuing treatment exception to our settled discovery rule for medical malpractice claims. Instead, the court imprudently intrudes into a critically important sphere of health care policy-making and makes its own preferred policy judgment without any inkling of the effect it might have on the cost of health care in Massachusetts, a matter of acute concern to the executive and legislative branches of government. These branches are far better equipped to balance the benefits of a prolonged statute of limitations with the cost and access issues it implicates. Just because the court can act to change the law does not mean that it should. Therefore, I respectfully dissent from the court’s adoption of the continuing treatment doctrine for medical malpractice cases.
For nearly forty years, our law has been clear: a cause of action for medical malpractice “accrue [s] when the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant’s conduct.” Franklin v. Albert, 381 Mass. 611, 619 (1980). See G. L. c. 231, § 60D. Once the harm and its causal relationship to acts of the physician is known or reasonably should have been learned, the statute of limitations clock starts to run, and the patient has three years to determine whether to file suit. See Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990).
Although I agree with the court’s articulation of our rule that, in the absence of explicit legislative direction, it may determine, as a matter of common law, when a cause of action accrues, and hence when the limitation period begins to run, see Franklin, 381 Mass. at 617, the absence of explicit statutory language does not mean that the court should act to change settled law in a manner inconsistent with legislative objectives. See Rosenbloom v. Kokofsky, 373 Mass. 778, 780 (1977). In this case, the adoption of the continuing treatment doctrine runs contrary to the legislative aims undergirding the Commonwealth’s medical malpractice statutory framework and ignores decades of work and study by the executive and legislative branches regarding reducing the cost of health care in the Commonwealth, ensuring both affordability *390 and access.[1] Indeed, the court’s ignorance of the impact on the cost of health care of its sudden change of mind on the accrual of malpractice claims is staggering.[2] If ever there was a case that *391 cried out for judicial restraint and deferral to the branches of government best equipped to strike the proper balance between ensuring affordable and available health care with the protection of injured patients, this is it.
1. Legislative intent. After our adoption of the discovery rule in Franklin, the Legislature amended G. L. c. 231, § 60D, regarding the limitations period during which a minor might bring a claim for medical malpractice. See St. 1986 c. 351, § 23. The legislative history is clear that the Legislature knew that we had adopted the discovery rule, and this knowledge informed the course of the statute’s amendment. See Annual Report of the Special Commission Relative to Medical Professional Liability Insurance and the Nature and Consequences of Medical Malpractice, 1987 House Doc. No. 5262.[3] In addition, our prior cases have carefully considered the intent of the Legislature in enacting major pieces of medical malpractice legislation, St. 1975, c. 362, and St. 1986 c. 351, and we have repeatedly acknowledged its concern regarding the costs associated with medical malpractice litigation and its efforts to ameliorate the costs of medical malpractice insurance. See, e.g., Darviris v. Petros, 442 Mass. 274, 283-284 (2004) (describing medical malpractice act of 1986 as “an ex *392 haustive statutory scheme governing medical malpractice claims” and concluding that ‘“[e]xpanding the scope of damages available to plaintiffs who are victims of medical malpractice, and the period within which to make such claims, is contrary to the express intent of the Legislature in enacting St. 1986, c. 351”); McGuiggan v. New England Tel. & Tel. Co., 398 Mass. 152, 163 (1986) (Lynch, J., concurring) (”[T]he General Court has recently limited the amount that may be recovered by victims of medical malpractice in an attempt to solve what it perceives as a crisis in the medical profession brought about by the burgeoning cost of malpractice insurance. St. 1986, c. 351. The Legislature has acted to restrict recovery by injured litigants in order to limit the expense of practicing medicine”). See also Paro v. Longwood Hosp., 373 Mass. 645, 647 (1977) (tribunal requirement of medical malpractice act of 1975 was enacted ‘“as part of a comprehensive package designed to ensure the continued availability of medical malpractice insurance at a reasonable cost)”.
In sum, the result reached by the court today is anomalous in light of the legislative history and intervening decisions of this court, which recognize that the medical malpractice statutory framework is intended to moderate the cost and expense of medical malpractice litigation and that such a purpose is accomplished, in part, by the statute of limitations period. The court notes that the absence of legislative action cannot be interpreted as an affirmative rejection of the continuing treatment doctrine. In reaching this conclusion, however, the court ignores the fact that the statutory scheme was developed in tandem with the common law, and that expanding the period in which a medical malpractice claim may be brought markedly departs from the clear policy aims the Legislature sought to accomplish by repeatedly enacting legislation addressing malpractice claims, insurance, and the objective of reducing the time of exposure to such malpractice claims. See note 2, supra.
Finally, it is notable that the Legislature did include express ‘“exceptions” to the limitations period in G. L. c. 231, § 60D. First, there is an exception so any child under the age of six “shall have until his ninth birthday” to bring a claim. Second, the seven-year statute of repose has an exception for “the leaving of a foreign object in the body.” Id. Given the Legislature’s consideration and inclusion of these exceptions, I cannot conclude that a “continuing treatment” exception should be inferred where it was not included by the Legislature. “The fact that the Legislature *393 specified one exception ... strengthens the inference that no other exception was intended.” Joslyn v. Chang, 445 Mass. 344, 350 (2005), quoting LaBranche v. A.J. Lane & Co., 404 Mass. 725, 729 (1989).
Thus, contrary to the court’s conclusion, it is apparent that, in the medical malpractice context, the Legislature has concurred with, and maintained, our uniformly applied ‘“accrual” standard, as articulated in Franklin.[4] The statutory history and framework reflect a legislative choice to balance the goals of protecting defendant health care providers from extended tort exposure from stale claims, and of eliminating the “manifest injustice” which would result without the discovery rule for plaintiffs who are “blameless[ly] ignoran[t]” of information which might have put them on inquiry notice for purposes of investigating and possibly pursuing a claim. See Franklin, 381 Mass. at 618.
The decision today elevates this latter policy concern over the former, based on the court’s belief that the continuing treatment exception to the discovery rule would benefit patients by addressing a shortcoming it perceives in our current law, namely that patients are unable to make informed judgments as to negligent treatment while such treatment is ongoing. See, e.g., Harrison v. Valentini, 184 S.W.3d 521, 524 (Ky. 2005). In adopting the continuing treatment exception, however, the court fails to consider future impacts to the health care industry — impacts to which the Legislature has dedicated decades of study and, in response, carefully crafted legislation that reflects an effort to best balance competing policy concerns. Where the Legislature’s policy determinations are fairly clear, the court should defer to those judgments.
2. Adopting the exception by analogy. I also disagree with the court’s reasoning that our adoption of the continuing representation doctrine to the discovery rule in legal malpractice claims, see Murphy v. Smith, 411 Mass. 133, 137-138 (1991), justifies the adoption of a continuing treatment exception to the discovery rule in medical malpractice claims. I disagree with the proposition that, “just as a wronged client is permitted to benefit from his or her attorney’s efforts to correct a problem without the disruption of exploring the viability of a legal malpractice action, so, too, is a patient permitted that same benefit without the disruption of *394 exploring the viability of a medical malpractice action.” Ante at 380. This statement both mischaracterizes the rationale underlying the continuing representation doctrine, and downplays the significant differences and interests at stake in those two arenas.
First, with respect to legal malpractice, as we have held, the continuing misrepresentation doctrine ‘“recognizes that a person seeking professional assistance has a right to repose confidence in the professional’s ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered” (citation omitted). Murphy, 411 Mass. at 137. Implicit in the doctrine is an understanding that a person seeking legal services may not recognize that certain acts or omissions by an attorney constitute malpractice. Our justification of the doctrine says nothing, however, about permitting the representation to continue so that an attorney may correct an error arising from the attorney’s conduct; to the contrary, the facts in Murphy suggest that the attorney accused of malpractice did nothing to correct his alleged error. Id.
Moreover, the rationale for adopting the continuing representation doctrine is largely distinguishable from any analogous rule in the medical malpractice context. The ‘“continuing representation” principle that we recognized in the context of legal malpractice arose from assurances given by an attorney that he had attended to a legal issue that had no perceptible manifestation to the client. See id. at 136. In the field of legal malpractice, there are situations, such as the one presented by Murphy, where the attorney may assure the client that a certain task has been carried out correctly and where the client should be able to accept such representations in the absence of information to the contrary. Such a rule makes sense in the legal malpractice context because the alleged act or omission which gives rise to a claim and causes an injury to the plaintiff is caused somewhere other than in the plaintiff’s own body, often under circumstances remote from a plaintiff’s ability to detect circumstances which might put him or her on notice of a claim. See, e.g., Murphy, 411 Mass. at 137 (plaintiffs unaware of attorney’s purportedly improper certification of good record title until receipt of letter from neighbor’s attorney). The same cannot be said about the injury in a medical malpractice case, especially where the defendant’s actions had a direct and perceptible effect on the patient’s body.
The court also justifies its adoption of the continuing treatment exception by analogy to the continuing representation doctrine in *395 legal malpractice on the ground that the Legislature otherwise used almost identical language to describe the limitations period for medical malpractice claims and for legal malpractice claims. It is apparent, however, that the Commonwealth’s legislation governing medical malpractice was enacted in light of a number of competing policy concerns that are unique to the health care industry — concerns simply not present in the practice of law — a practice that we as a court regulate.[5]
3. Conclusion. The court’s adoption of the continuing treatment exception to the discovery rule is inconsistent with the apparent legislative objectives underlying the Commonwealth’s medical malpractice statutory regime, particularly G. L. c. 231, § 60D. In my view, the court should apply the settled discovery rule to the facts of this case. As the court acknowledges, the defendant’s treatment ceased in December, 2005. Therefore, the plaintiffs’ action, brought in 2009, was not timely.

 The Legislature has committed extensive resources to understanding and addressing the issue of rising health care costs, not only in the area of medical malpractice, but across the health care industry as a whole. See House Committee Report concerning 2012 Senate Bill No. 2400, The Next Phase of Massachusetts Health Care Reform (between 2009 and 2020, “health spending is projected to double, outpacing both inflation and growth in the overall economy. The rapid rate of growth squeezes out other spending, for individual households, for businesses, for communities and in the state budget. That is why this effort [to address rising health care costs while improving health care quality and patient care] is essential for our long-term economic competitiveness and for the health of our residents”). To that end, it has mandated that various executive agencies, including the Health Policy Commission, the office of the Attorney General, and the Department of Public Health, monitor and report on the costs of health care in the Commonwealth. See G. L. c. 6D, § 8, as amended by St. 2013, c. 35, § 3 (mandating annual hearings and report concerning health care expenditures); G. L. c. 12, § 11N (mandating that Attorney General “monitor trends in the health care market” and granting authority to investigate medical providers and payers); G. L. c. 12C, § 17 (Attorney General tasked with investigating information “related to health care costs and cost trends, factors that contribute to cost growth within the commonwealth’s health care system and the relationship between provider costs and payer premium rates”); St. 2012, c. 224, § 272 (mandating that Department of Public Health “create an independent task force ... to study and reduce the practice of defensive medicine and medical overutilization in the commonwealth .... The task force shall file a report of its study, including its recommendations and draft of any legislation, if necessary . . . ”).
These agencies produce extensive annual reports on the issue of rising health care costs, as well as recommendations across a wide range of health care policy issues. See, e.g„ Health Policy Commission, 2015 Cost Trends Report, http://www. mass.gov/anf/budget-taxes-and-procurement/oversight-agencies/health-policy-commission/publications/2015-cost-trends-report.pdf [https://perma.cc/C7ME-KMGN]; Office of the Attorney General, Examination of Health Care Cost Trends and Cost Drivers, (Sept. 18, 2015), http://www.mass.gov/anf/budget-tax es-and-procurement/oversight-agencies/health-policy-commission/annual-cost-trends-hearing/2015/cost-containment-5-report.pdf [https://perma.cc/XK7N-S74D]; Center for Health Information and Analysis, Performance of the Mass achusetts Health Care System, Annual Report, (Sept. 2015), http://www.chia mass.gov/assets/2015-annual-report/2015-Annual-Report.pdf [https://perma.cc/ 5DZ6-VW2V],

 The court writes that there is no reason to believe, let alone adequate factual information in the record, to support a belief that adoption of the continuing treatment doctrine will affect enough claims to have any meaningful impact on the cost of medical malpractice insurance. See ante at note 16. This argument underscores the obvious: the court simply cannot know, in the way the Legislature can, whether or how adoption of the doctrine will affect the cost of *391 medical malpractice insurance. However, where concern over such costs has been a major diiver behind legislative reform in this area, see discussion infra. it seems apparent to me that the court should take a more cautious approach to redefining this area of settled law.

 The Special Commission Relative to Medical Professional Liability Insurance and the Nature and Consequences of Medical Malpractice (commission) was established by St. 1975, c. 362, § 12. Its purposes included making recommendations to ameliorate the high cost of medical malpractice insurance. The report, which issued in 1987, discussed the issues that led to the current version of G. L. c. 231, § 60D, including the enactment of the current limitations period:
“Most actuarial experts that testified before both the Special Commission and the Committee on Insurance stated meaningful savings would be realized by a change to the statute of limitations. At present, an action may be commenced within three years of discovery that there are grounds to initiate a suit for medical malpractice, but there is no limit on the time period in which such discovery must be made. Under Chapter 351, the statute of limitations for medical malpractice actions would be revised to place an outside limit on the time which a lawsuit may be commenced, that limit being seven years after the date of the occurrence which gave rise to the claim, except when the action is based upon the leaving of a foreign object in the body in which case no outside limit shall apply (Section 30, Chapter 351)."’ (Emphasis added.)
Annual Report of the commission, 1987 House Doc. 5262, at 9.

 To the extent that the corn! relies on decisions from other jurisdictions in adopting the continuing treatment doctrine, those cases do not affect my view of what the Legislature intended.

 The language in context is different. As discussed, there is a statute of limitations that the Legislature enacted specifically to address medical malpractice and an even more specialized statute for cases involving minors. See G. L. c. 231, § 60D; G. L. c. 260, § 4. The medical malpractice limitations statute includes a statute of repose, but the statute for legal malpractice does not. The medical malpractice statute applicable to juveniles eliminates tolling until the minor’s eighteenth birthday (G. L. c. 260, § 7), but the legal malpractice statute does not. Compare G. L. c. 260, § 4, first par., with G. L. c. 231, § 60D. This express statutory language unmistakably demonstrates that the Legislature intentionally differentiated the medical malpractice and legal malpractice statutes of limitation.