Toomey, J.
INTRODUCTION
Plaintiff Cynthia Yerrick (“Yerrick”) brought this tort action to recover damages for physical and psychological injuries allegedly sustained by her as a result of physical, sexual and emotional abuse by Defendant Father Robert Kelley (“Kelley”). At the time the alleged acts of abuse occurred, Kelley was in the employ of Defendants, the Roman Catholic Bishop of the Worcester Diocese (the “Bishop”) and the Worcester Diocese (the “Diocese”).
Yerrick claims, in Counts VII through X, that the Bishop is liable for negligence (VII), clergy malpractice (VIII), negligent hiring/supervision (IX) and breach of fiduciary duty (X). In Counts XI through XVIII, she claims that the Diocese is liable for negligence (XI), sexual assault and battery (XII), invasion of right of privacy (XIII), intentional infliction of emotional distress (XIV), clergy malpractice (XV), negligent hiring/supervision (XVI), breach of fiduciary duty (XVII) and canonical agency (XVIII). This matter is now before the court on the motion by the Bishop and the Diocese to dismiss Counts VII through XVIII pursuant to Mass.R.Civ.P. 12(b)(5), (6) and (8). For the following reasons, Defendants’ motion is ALLOWED as to Counts VIII, X, XI, XII, XIII, XIV, XV, XVII and XVIII and DENIED as to Counts VII, IX and XVI.
BACKGROUND
Yerrick was born on July 30, 1964 and attended the Roman Catholic Church in Worcester, Massachusetts with her parents. She alleges that, “on or about 1968 and until December 1969,” Kelley, formerly a priest in the Worcester Diocese, committed numerous sexual assaults and batteries on her while she was attending the church. She also claims that Kelley threatened her and told her to keep ihe acts confidential. At that time Yerrick was a minor and was legally incompetent to consent to the alleged acts.
Yerrick alleges that the Diocese, as a “corporation sole,”[2] employed Kelley and the Bishop commencing in 1968. At the time of the alleged occurrences, Kelley was under the direction and supervision of the Bishop who, according to the complaint, failed to supervise Kelley and allowed him to sexually abuse and molest Yerrick.
Although these incidents allegedly occurred sometime between 1968 and 1969, Yerrick claims to have suppressed her memory of them until December, 1993. She asserts that she then recalled the memories for the first time while in counseling with Dr. Philip J. Smith. Yerrick maintains that she lived in internal conflict throughout her life and suffered depression and low self-esteem due to her suppressed memories of the alleged sexual violations. Additionally, she claims to have incurred medical and hospital bills and to have endured pain, suffering and mental anguish because of Defendants’ alleged acts.
Yerrick filed suit against Kelley, the Bishop and the Diocese, as a corporation sole, in August, 1995. Service of process was effected by delivering a copy of the Summons and Complaint to one Mary Campbell, who identified herself to the serving Sheriff as the person in charge at the Defendants’ Office of Chancery.
DISCUSSION
A. Standards for Motions to Dismiss
1. Mass.R.Civ.P. 12(b)(5) (Insufficiency of Service)
To dismiss a claim under Mass.R.Civ.P. 12(b)(5), a court must find that the plaintiff failed to act with due diligence, that the omission resulted in delay of service of process and that the delay prejudiced the defendant. Ahern v. Warner, 16 Mass.App.Ct. 223, 224 (1983). Thus, Rule 12(b)(5) requires the court to balance the plaintiffs lack of good faith against resulting *601 prejudice to the defendant. Brissette v. Crantz, 23 Mass.App.Ct. 213, 217 (1986).
2. Mass.R.Civ.P. 12(b)(6) (Insufficiency of Claim)
When evaluating the sufficiency of a complaint in the context of a Mass.R.Civ.P. 12(b)(6) motion, the court must accept as true the factual allegations of the complaint as well as any inferences in the plaintiffs favor that can be drawn therefrom. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991); Ourfalian v. Aro Mfg. Co., 31 Mass.App.Ct. 294, 296 (1991) (All inferences should be drawn in the plaintiffs favor, and the complaint “is to be construed so as to do substantial justice . . .”). Plaintiffs complaint should not be dismissed for failure to state a claim “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). “A complaint is not subject to dismissal if it could support relief on any theory of law” (emphasis in original). Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).
3. Mass.R.Civ.P. 12(b)(8) (Misnomer)
As there is no Massachusetts case law interpreting Mass.R.Civ.P. 12(b)(8), Massachusetts courts may employ the cognate federal interpretation. That interpretation favors appropriate amendments in the interests of justice. United States v. A.H. Fischer Lumber Co., 162 F.2d. 872 (4th Cir. 1947). The Massachusetts and Federal Rules of Civil Procedure allow for amendments of process, in the court’s discretion, provided that the amendment would not prejudice the rights of the party against whom the process is issued. Mass.R.Civ.P. 4(g); Fed. R. Civ. P. 4(h). Thus, if a misnomer is readily correctable by amendment, the fact of misnomer should not lead inexorably to dismissal.
Fischer held that because a suit at law is a serious matter, a defendant who is clearly identified by the complaint and the summons is properly before the court even if she has been improperly named. Fischer, supra at 874. Therefore, a Rule 12(b)(8) motion to dismiss ought not to cause the complaint to expire if the misnamed defendant is easily identified notwithstanding the formal misdescription. See Taliferro v. Costello, 467 F.Supp. 33, 35 (E.D. Pa. 1979).
B. The Service and Misnomer Argument (Counts VII through X)
The Bishop and the Diocese argue that the Bishop was improperly named and improperly served as a defendant because Yerrick did not identify the individual holding the title of Bishop. The Defendants claim that process could not be properly served because the Bishop was not individually named. The argument is not persuasive.
Massachusetts courts recognize “notice pleading.” Ciccone v. Smith, 3 Mass.App.Ct. 733 (1975) (complaint sufficient if it gives fair notice of the claims of the parties and contains a short, plain statement of the claim showing the pleader is entitled to relief). Moreover, leave of court to amend a pleading is to be given freely when justice so requires. Mass.R.Civ.P. 15(a). Amendments of process are also readily permitted. Mass.R.Civ.P. 4(g).
In the present case, as there is only one Bishop of the Worcester Diocese at any point in time, Yerrick’s complaint contains sufficient information to give the Bishop notice of the claims against him. See Ciccone, supra. Even if, however, the Bishop were incorrectly named, such an error would not necessarily be fatal to Yerrick’s case in view of the amendabilily of the complaint. See Fischer, supra: see also Taliferro, supra (amendments to correct misnomers freely allowed). The complaint will, therefore, not fail by reason of misnomer.
Furthermore, service of the complaint by delivering a copy of the summons and complaint to Mary Campbell, who identified herself to the Sheriff as the person in charge at the Defendants’ Office of Chancery, was lawful and effective. See Brissette, supra: see also Mass.R.Civ.P. 4(d)(2) (service upon a corporation proper when delivered to an agent or person in charge of the corporation’s business at the principal place of business).
C. The Charitable Immunity Contention (Counts XI through XVIII)
On December 23, 1969, the Supreme Judicial Court expressed its intention to abolish, in the future, the doctrine of charitable immunity. Colby v. Carney, 356 Mass. 527, 528 (1969). The General Court responded by enacting General Laws Chapter 231, §85K, which abolished charitable immunity effective in 1971. Because the abolitionary statute is not retrospective in effect, Higgins v. Emerson Hospital, 367 Mass. 714 (1975), and because the Supreme Judicial Court has ruled that the doctrine of charitable immunity retains its protective function with respect to injuries occurring after the date of the Colby decision, but before the date of the statute abolishing charitable immunity, Higgins, supra, tortious acts occurring prior to Colby (December 23, 1969) and between Colby and the abolition (1971) will continue to enjoy the sheltering effect of charitable immunity.
In the present case, Yerrick claims the alleged acts occurred “on or about 1968 and until December 1969.” There is, in her complaint, no assertion that any acts occurred after the 1971 effective date of the statutory abolition. Because the last alleged date of actionable conduct was sometime in December, 1969, and because the effect of Higgins is to recognize that all pre-1971 acts fall within the protective pale of charitable immunity, the Diocese is entitled to cloak itself with that protection as to any counts reliant upon pre-1971 acts. It follows, then, that dismissal is appropriate with respect to Counts XI, XII, XIII, XIV, XV, *602 XVII and XVIII for the reason that those counts all assert the Diocese’s liability, via the doctrine of respon-deat superior, for pre-1971 underlying acts.
D.Statute of Limitations (Counts VII through XVIII)
Massachusetts courts recognize the “discovery rule” for purposes of determining when certain tort actions accrue. Franklin v. Albert, 381 Mass. 611, 617 (1980). Under that rule, a cause of action, in cases involving latent or inherently undiscoverable injuries, does not accrue until the plaintiff learns or reasonably should have learned that she has been harmed by a defendant’s conduct. Franklin, supra; see also Phinney v. Morgan, 39 Mass.App.Ct. 202, 206 (1995) (discovery rule applicable to the accrual of tort claims arising out of incestuous child abuse).
As Yerrick claims she repressed her recollection of her alleged childhood molestation until December 1993, her cause of action did not accrue until then. See Franklin, supra, Phinney, supra. The applicable statute of limitations is three years and she filed suit in August 1995. Her claims, therefore, are not time-barred. See M.G.L.c. 160, §2A.
E.Vicarious Liability (Counts VIII through X)
Yerrick claims the Bishop is vicariously liable for Kelley’s actions because a master-servant relationship existed between the two at the time of the alleged events.
A master-servant relationship exists when one individual, the master or employer, has the ability to control the actions of another individual, the servant or employee. Silvia v. Woodhouse, 356 Mass. 119 (1969). An employer may be held liable for the actions of the employer’s employees. Worcester Ins. Co. v. Fells Acre Day School, 408 Mass. 393, 404 (1990). An employer’s knowledge of an employee’s tortious activity may be evidence of the employer’s ratification of that act. Pinshaw v. Metropolitan District Comm’n, 33 Mass.App.Ct. 733, 735, rev. denied 414 Mass. 1105.
In Worcester Ins. Co. v. Fells Acre Day School, supra, the Supreme Judicial Court held that an employer is not vicariously liable for the acts of the employer’s employees unless the acts are within the scope of employment and motivated to serve the employer. In that case, a corporate operator of a facility was not vicariously liable for the acts of sexual abuse by employees on children enrolled at the facility because the record did not contain sufficient evidence that the wrongful intent of the employees could be imputed to the operator. Fells Acres, supra at 407-09.
Although the Bishop now offers contentions which, if established, might warrant a finding for the Bishop under the Fells Acres doctrine, the factual question of whether the Bishop impliedly ratified Kelley’s acts toward Yerrick cannot be decided from the face of the complaint. The parties should be allowed to obtain discovery and to present evidence to a trier of fact on the issue of the Bishop’s control and knowledge before a decision on the applicability of Fells Acre can be made. For that reason, the instant attack upon those counts asserting the Bishop’s vicarious liability will be rejected.
F.Negligence (Count VII)
An action in tort, seeking to recover against a Bishop for his negligent appointment of a priest, cannot succeed on the merits without evidence of the Bishop’s foreknowledge of the priest’s improper inclinations. Carini v. Roman Catholic Bishop of Springfield, 219 Mass. 117, 118-119 (1914). However, a complaint that alleges negligent appointment is sufficient to survive a motion to dismiss (focusing, as it must, on the four corners of the complaint), and in such a case the question of whether or not evidence, indicative of the Bishop’s foreknowledge, can be adduced is more properly left to a motion for summary judgment or to trial. Because the instant complaint recites the necessary allegations, it will survive defendants’ motion to dismiss. Its evidentiary sufficiency may be tested in later proceedings.
G.Clergy Malpractice (Counts VIII and XV)
Yerrick’s claim that the Bishop and the Diocese both committed clergy malpractice in failing adequately to supervise Kelley has no grounding in law. Although particular standards of care have been held to exist for other professions, such as those that include physicians and attorneys, Massachusetts has not recognized an actionable standard with respect to clergy. Because neither the Massachusetts General Court nor the Supreme Judicial Court has definitively acknowledged a cause of action for clergy malpractice, this court will decline to create such a claim in the case at bar.[3]
H.Negligent Hiring/Supervision (Counts IX and XVI)
“The First Amendment [made applicable to the States by the Fourteenth Amendment] prohibits civil courts from intervening in disputes concerning religious doctrine, discipline, faith, or internal organization.” Alberts v. Devine, 395 Mass. 59, 72 (1985). For that reason, Massachusetts courts have been reluctant to interfere in controversies that are exclusively or primarily of an ecclesiastical nature. United Kosher Butcher’s Ass’n v. Associated Synagogues of Greater Boston, Inc., 349 Mass. 595 (1965). Churches and clergymen are, however, not entirely immune from judicial scrutiny. See Alberts, supra at 75 (the religion clauses of the First Amendment neither preclude the imposition of liability on a minister nor bar a court from inquiring into a church’s proceedings). Because nonecclesiastical acts or omissions constituting negligence are doubtless actionable, a complaint alleging such negligence will not run afoul of the First Amendment.
*603 As the issue of whether the alleged negligence of the Bishop or the Diocese is ecclesiastical vel non cannot be decided from the face of the complaint, the parties must be allowed to obtain discovery and to present evidence to a trier of fact. See Alberts, supra (the First Amendment does not present an obstacle to parties’ rights to discovery and trial evidence of a church’s proceedings bearing on a minister’s actions).
I. Breach of Fiduciary Duty (Counts X and XVII)
As discussed above, Yerrick’s claim that the Bishop breached his fiduciary duty as a priest has no grounding in law. See Section G, supra. Accordingly, Count X (against the Bishop for his own conduct) and Count XVII (against the Diocese, vicariously, for Kelley’s actions) must both be dismissed.
ORDER
For the foregoing reasons it is hereby ORDERED that the motion to dismiss of Defendants, the Roman Catholic Bishop of the Worcester Diocese and the Worcester Diocese, is ALLOWED as to Counts VIII, X, XI, XII, XIII, XIV, XV, XVII and XVIII and DENIED as to Counts VII, IX and XVI.[4]

A “corporation sole” is defined as an:
Unusual type of corporation consisting of only one person whose successor becomes the corporation on his death or resignation; limited in the main today to bishops and heads of dioceses.
Black’s Law Dictionary 309 (rev. 5th ed. 1979).

Other jurisdictions have refused to recognize claims for clergy malpractice because of fears that courts and juries would become excessively entangled with religion in establishing standards of care based on beliefs of different denominations. See, e.g., Schmidt v. Bishop, 779 F.Supp. 321 (S.D.N.Y. 1991); Greene v. Roy, 604 So.2d 1359 (La.App. 1992); White v. Blackburn, 787P.2d. 1315 (Utah App. 1990).

Because defendant, Robert Kelley, has sought no relief in these proceedings, the Order hereby entered shall have no effect on those Counts (I through VI) by which claims are made against him.