Toomey, J.
INTRODUCTION
Plaintiff Edward L. Gagne (“Gagne”) brought this tort action to recover damages for physical and psy *502 chological injuries sustained by him as a result of physical, sexual and emotional abuse by Defendants Brendon O’Donoghue (“O’Donoghue”) and Peter In-zerillo (“Inzerillo”). At the time the alleged acts of abuse occurred, O’Donoghue was in the employ of Defendant, Bishop Bernard Flanagan (“Bishop Flanagan”) and Inzerillo was in the employ of Defendant, Bishop Timothy Harrington (“Bishop Harrington”). Both Bishop Flanagan and Bishop Harrington were in the employ of the Worcester Diocese (the “Diocese”).
Gagne claims in Counts I through VI that O’Donoghue is liable for negligence (I), sexual assault and battery (II), invasion of right to privacy (III), intentional infliction of emotional distress (IV), clergy malpractice (V), and breach of fiduciary duty (VI). Gagne claims in Counts VII through X, that Bishop Flanagan is liable for negligence (VII), clergy malpractice (VIII), negligent hiring/supervision (IX), and breach of fiduciary duty (X). The same claims are made against Bishop Harrington in Counts XXVIII through XXXI. In Counts XI through Counts XVIII and Counts XXXII through XXXIX, Gagne claims that the Diocese is liable for negligence (XI and XXXII), sexual assault and battery (XII and XXXIII), invasion of right of privacy (XIII and XXXIV), intentional infliction of emotional distress (XIV and XXXV), clergy malpractice (XV and XXXVI), negligent hiring/supervision (XVI and XXXVII), breach of fiduciary duty (XVII and XXXVIII), and canonical agency (XVIII and XXXIX). This matter is before the court on the motions of O’Donoghue, Bishop Flanagan, Bishop Harrington and the Diocese to dismiss pursuant to Mass.R.Civ.P. 12(b)(6) or in the alternative for summary judgment pursuant to Mass.R.Civ.P. 56(c).[2] For the following reasons, Defendants’ motion is ALLOWED as to Counts V, VI, VIII, X, XV, XVII, XXIX, XXXI, XXXVI, and XXXVIII and DENIED as to Counts I, II, III, IV, VII, IX, XI, XII, XIII, XIV, XXVIII, XXX, XXXII, XXXIII, XXXIV, XXXV, XXXVII, and XXXIX.
BACKGROUND
Gagne was born on July 30, 1965 and was an active member of Our Lady of the Rosary Church in Spencer, Massachusetts. Gagne alleges that in the summer and fall of 1978, while he was learning to be an altar boy, O’Donoghue, the priest at Our Lady of the Rosary, committed several sexual assaults and batteries on him in the Church rectory. Gagne claims that O’Donoghue told him not to tell anyone what had occurred.
In the fall of 1978, Gagne told his mother about the sexual assaults. Gagne’s mother contacted Bishop Flanagan, the bishop of the Diocese and reported the alleged sexual assaults involving O’Donoghue. Gagne alleges that he spoke privately with Bishop Flanagan, who told him never to disclose these incidents to anyone and that he would take care of the situation. O’Donoghue was removed from the Church and sent to a religious facility in Petersham, Massachusetts.
In early 1981, Gagne’s mother arranged for him to meet with Alan Kanner (“Kanner”), a counsellor at Worcester Counseling Associates. After approximately eight sessions, Kanner determined that Gagne was unable to make a meaningful connection between his psychological problems and the alleged sexual acts with O’Donoghue.
In 1985, Gagne applied to St. John’s Seminary in Brighton, Massachusetts to become a priest. As the Vocation Director for the Diocese, Inzerillo instructed Gagne that he needed to undergo counselling prior to his admission into St. John’s. Gagne began meeting with Inzerillo in July 1985 on a weekly basis. Gagne alleges that during the period July 1985 through October 1986, in the course of their counselling sessions, Inzerillo committed sexual assaults and batteries on him. Bishop Harrington was the bishop for the Diocese during the period when these alleged acts occurred.
In 1989, Gagne began therapy with Dr. Robert Adelberg, (“Dr. Adelberg”) at Fallon Clinic, Inc. in Worcester, Massachusetts. Dr. Adelberg diagnosed Gagne with dysthymic disorder which is characterized by self-esteem problems, avoidance, and depressive episodes. During their fourth meeting Gagne mentioned for the first time the alleged sexual encounters with O’Donoghue and Inzerillo. Gagne discontinued his therapy for approximately nine months to one year.
Gagne contends that, on June 22,1991, while dealing with traumatic emotional problems with his partner, he began to realize for the first time that there was a causal link between these traumatic feelings and the acts of O’Donoghue and Inzerillo. On June 26, 1991, Gagne returned for counselling. Dr. Adelberg noted a change in Gagne’s demeanor and noted “there was the beginning of a certain linkage that was being made between history and current emotion.” Gagne continued his counseling with Adelberg. In 1993, Dr. Adelberg determined that Gagne suffered from posttraumatic stress disorder as a result of his experiences with O’Donoghue and Inzerillo.
Gagne filed suit on May 20, 1994. He claims to have incurred medical bills and to have endured pain, suffering and mental anguish because of the defendants’ alleged acts.
DISCUSSION
A. Standard for Motion to Dismiss: Mass.R.Civ.P. 12(b)(6)
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well pleaded factual allegations of the complaint, as well as any inferences which can be drawn therefrom in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nader v. Citron, 372 Mass. 96, 98 (1977) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).
*503 B. Standard for Summary Judgment Mass.R.Civ.P. 56(c)
Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The existence of disputed facts is consequential only if those facts have a material bearing on the disposition of the case. Norwood v. Adams-Russell Co., 401 Mass. 677, 683 (1988). A party in a civil action moving for summary judgment on a claim on which the opposing party will have the burden of proof at trial is entitled to summary judgment if the moving party demonstrates, by reference to the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, that the party opposing the motion has no reasonable expectation of proving an essential element of that parly’s case. Kourouvacillis v. General Motors Corp., 410 Mass. 706, 716 (1991). “(T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). “If the moving party established the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
C. The Statute of Limitations Defense to Counts I through XVII and Counts XXVIII though XXXIX
Defendants O’Donoghue, Bishop Flanagan, Bishop Harrington, and the Diocese argue that Gagne’s claims are barred by the statute of limitations because the action was filed more than three years after the alleged abuse by O’Donoghue and Inzerillo.
The statute of limitations for tort actions is, generally, three years. G.L.c. 260, §2A. More specifically, the statute of limitation for claims of sexual assault and battery is three years. G.L.c. 260, §4C.[3] Massachusetts courts recognize the “discovery rule” for purposes of determining when certain tort actions accrue. Riley v. Presnell, 409 Mass. 239, 243 (1991) (discovery rule applies to claims for psychotherapeutic malpractice); Franklin v. Albert, 381 Mass. 611, 617 (1980) (extending discovery rule to medical malpractice cases). Under that “rule,” a cause of action, in cases involving latent or inherently undiscoverable injuries, does not accrue until the plaintiff learns or reasonably should have learned that he has been harmed by a defendant’s conduct. Franklin, supra.
The defendants argue that, under G.L.c. 260, §4C, the discovery rule can only be applied to claims against defendants who are the alleged perpetrators. In addressing this very argument, the Massachusetts Appeals Court found “nothing in the plain language of §4C to indicate an intent by the Legislature to preclude a judicially crafted discovery rule for the benefit of those who bring an action against persons other than the perpetrators of childhood sexual abuse.” Phinney v. Morgan, 39 Mass.App.Ct. 202, 205-06 (1995), rev. denied, 421 Mass. 1104 (extending discovery rule to tort actions arising out of incestuous child abuse). Phinney would seem to defeat defendants’ arguments that the §4 discovery rule ought to be limited to complaints brought against perpetrators.
Additionally, the defendants contend that the Legislature, in enacting G.L.c. 260, §4C, intended that the discovery rule apply only to claims for sexual assault and battery and not other causes of action which arise out of the sexual abuse. There is no such limiting language in G.L.c. 260, §4C. In the absence of a statutory definition as to when a cause of action accrues, the determination is “the product of judicial intepretation in this Commonwealth.” Riley, supra, at 243 (quoting Franklin, supra, at 617). Accordingly, this court finds that the discovery rule extends to all of Gagne’s causes of action which are not otherwise limited by statute.
The defendants next argue that, even if the discovery rule applies, Gagne’s claims are barred because he failed to show, as a matter of law, that he did not know and could not have reasonably known that he was harmed by their actions more than three years before filing his lawsuit.
Gagne brought suit on May 20, 1994. In his deposition, Gagne claims that he did not connect his emotional problems with the alleged sexual acts committed by O’Donoghue and Inzerillo until June 1991. Deposition of Edward Gagne at page 199. Gagne’s contention was supported by Dr. Adelberg’s statement that Gagne did not fully understand prior to June 1991 that O’Donoghue’s actions caused his psychological injuries. Deposition of Dr. Adelberg at page 36. Gagne further stated that June 1991 was the first time he considered bringing a lawsuit against any of the defendants. Deposition of Edward Gagne at page 183. The defendants assert that the depositions contradict Gagne’s earlier statements in which he admitted telling others including his mother, Kanner, and Dr. Adelberg about the alleged acts with O’Donoghue and Inzerillo and how these sexual experiences made him, on occasion, feel sick and embarrassed. The deposition testimony does not however, directly contradict Gagne’s statement that he first fully understood that his difficulty in maintaining relationships, his fear of authority figures, and his guilt were causally related to the alleged sexual assaults. Compare Phinney, supra at 207-08 (plaintiffs’ claims barred where affidavit contradicted earlier admission that they had considered filing suit against their parents). Accordingly, the court concludes that Gagne has presented sufficient evidence to raise a genuine issue of material fact as to when he knew or should have known that his injuries were caused by the defendants’ conduct. Such an issue is material to the defense of statute of *504 limitations and renders defendants’ motion premature.
D. The Vicarious Liability Claim in Counts XI through XVIII, excluding XVI and Counts XXXII through XXXIX, excluding XXXVII.
Gagne claims the Diocese is vicariously liable for O’Donoghue’s and Inzerillo’s actions because a master-servant relationship existed between them at the time of the alleged events.
A master-servant relationship exists when one individual, the master or employer, has the ability to control the actions of another individual, the servant or employee. Silvis v. Woodhouse, 356 Mass. 119, 124 (1969). We will assume, arguendo, that such a relationship exists between the parties at bar. That relationship forms the foundation, theoretically, for vicarious liability because an employer may be held liable for intentional torts committed by its employees within the scope of their employment. Worcester Ins. Co. v. Fells Acre Day School, 408 Mass. 393, 404 (1990). “(C)onduct of an agent is within the scope of employment if it is the kind he is employed to perform . . . ; if it occurs substantially within the authorized time and space limits . . . ; and if it is motivated, at least in part, by a purpose to serve the employer . . .” (citations omitted) Id. (corporate operator of a facility was not vicariously liable for the acts of forcible sexual molestation or rape by employees on children enrolled at the facility because such acts were not the kind the employees were employed to perform and they were not motivated to commit such acts by a purpose to serve their employer) (quoting Wang Laboratory, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986). But, there is little likelihood that the instant plaintiff will prevail upon a “scope of employment” theory of vicarious liability because the torts he alleges fall well outside the scope of the perpetrators’ employment.
That observation does not, however, sound the death knell for all of plaintiffs vicarious liability claims. An employer may also be liable by reason of his ratification of the employee’s intentional torts. Pinshaw v. Metropolitan District Commission, 33 Mass. App. Ct. 733, 735 (1992), rev. denied, 414 Mass. 1105. An employer’s knowledge of an employee’s tortious activity may be evidence of the employer’s ratification of that act. Id., at 736-37. Other factors which may be evidence of ratification on the part of an employer include “a failure to investigate and discipline an employee; allowing an improper prosecution to proceed; and failure to disavow an employee’s unauthorized action and to mitigate the harm caused once the facts are ascertained.” (Citations omitted.) Id. at 737. “Even when the evidence supporting such an inference is slender, ‘the question of ratification should [be] submitted to the jury.’ ” Id. (quoting Boice-Perrine Co. v. Kelley, 243 Mass. 327, 330-31 (1923)). Such is the case at bar.
There is evidence that Bishop Harrington, while acting as Auxiliary Bishop in 1979, knew that allegations of sexual misconduct had been made against O’Donoghue. The Bishop admitted that a priest accused of such behavior would only be removed from active ministry where the priest had admitted such behavior or where the information became public. Deposition of Bishop Harrington at page 102. The Bishop also admitted that O’Donoghue spent a period of time following the allegations at the House of Affirmation and later returned to active ministry at other parishes. Additionally, the Bishop did not remember offering Gagne any kind of psychological counseling or therapy. Id. at 110. The evidence suggests that the Bishop tortiously failed to investigate O’Donoghue’s alleged misconduct and failed to mitigate the harm by warning parishioners or informing law enforcement. The evidence of those failings serves to raise an issue of material fact for a jury as to whether Bishop Harrington ratified O’Donoghue’s behavior.
With respect to Bishop Flanagan, he does not recall any allegations of sexual misconduct made against O’Donoghue or any meeting with Gagne or his parents. However, Gagne has presented evidence that Bishop Flanagan was aware of at least one allegation of sexual misconduct made against O’Donoghue. Specifically, at some point between 1960 and 1963, Bishop Flanagan telephoned Monsignor Sullivan to inform him of an allegation that O’Donoghue had engaged in inappropriate sexual conduct with a child. Deposition of O’Donoghue at page 55. O’Donoghue was not interviewed by anyone from the church regarding the allegations nor was he directed to counselling. Id. at 58. Additionally, there is evidence that Bishop Flanagan had a meeting scheduled on December 11, 1978 with Mr. and Mrs. Gagne. See Exhibit 10 in Plaintiffs Appendix. Following the meeting, the Bishop referred O’Donoghue to the House of Affirmation and later transferred him to another parish. This evidence suggests that not only was the Bishop aware of two allegations of sexual misconduct made against O’Donoghue, but that he also failed to investigate fully either allegation and failed to remove O’Donoghue from active ministry. Accordingly, the evidence raises a genuine issue of material fact as to whether Bishop Flanagan ratified O’Donoghue’s conduct. Those issues, -with respect to both Bishops, demonstrate that summary judgment ought not to issue.
E. The Clergy Malpractice Claim in Counts V, VIII, XV, XXIX, and XXXVI
Gagne’s claims that O’Donoghue, Bishop Flanagan, Bishop Harrington and the Diocese committed clergy malpractice have no supportable legal basis. Although particular standards of care have been held to exist for other professions, such as those that include physicians and attorneys, Massachusetts has not recognized an actionable standard with respect to clergy. Because neither the Massachusetts Legislature nor *505 the Supreme Judicial Court has definitely acknowledged a cause of action for clergy malpractice, this court declines to create such a claim in the case at bar.[4] Accordingly, Counts V, VIII, XV, XXIX, and XXXVI are hereby dismissed.[5]
F. The Charitable Immunity Defense to Counts XVI and XXXVII
The Diocese argues that it is immune from liability for any claims of negligent hiring or suspension which accrued prior to September 16,1971, the effective date of G.L.c. 231, §85K. That statute abolished charitable immunity and provides that a corporation may be liable up to twenty thousand dollars for any tort “committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation.”
The only activities, which occurred prior to 1971 and are material to the claims at bar, are the ordinations of O’Donoghue on May 18, 1950, and Inzerillo, in May 1970. The plaintiffs memorandum makes mention of sexual assault allegations against O’Donoghue made prior to 1971, but those allegations involved persons other than Gagne. Gagne’s claims arise from alleged acts which occurred in 1978 and 1985 through 1986 and from the Diocese’s subsequent failure to act. This court concludes, therefore, that the statutory abolition is fully implicated and deprives defendants of the protections of charitable immunity.
G. The Breach of Fiduciary Duty Claims in Counts VI, X, XXXI, XVII and XXXVIII
Gagne’s claims that O’Donoghue, Bishop Flanagan and Bishop Harrington breached their fiduciary duty as priests has no grounding in law. Accordingly, Count VI (against O’Donoghue), Counts X and XXXI (against Bishop Flanagan and Bishop Harrington for their own conduct) and Counts XVII and XXXVIII (against the Diocese, vicariously, for O’Donoghue’s and Inzerillo’s actions) must all be dismissed.
H.The Negligence Claims in Counts VII, XXVIII, XI and XXXII
An action in tort, seeking to recover against a Bishop for his negligent appointment of a priest, cannot succeed on the merits without evidence of the Bishop’s foreknowledge of the priest’s improper inclinations. Carini v. Roman Catholic Bishop of Springfield, 219 Mass. 117, 118-19 (1914). As discussed above, there is evidence that the defendants were aware of allegations made against O’Donoghue regarding his sexually molesting children. See Section D, supra. Furthermore, there is evidence that Bishop Flanagan and Bishop Harrington did not appropriately investigate Gagne’s allegations or notify the parishes about O’Donoghue’s behavior. Accordingly, summary judgment is denied as to Counts VII, XXVIII, XI, and XXXII.
I.The Free Exercise of Religion Defense to Counts Counts I, IX, XVI, XXX and XXXVII
The defendants argue that the claims for negligent hiring and supervision violate the Free Exercise of Religion Clause of the First Amendment. ‘The First Amendment [made applicable to the States by the Fourteenth Amendment] prohibits civil courts from intervening in disputes concerning religious doctrine, discipline, faith or internal organization.” Alberts v. Devine, 395 Mass. 59, 72 (1985), cert. denied, 474 U.S. 1014. For that reason, Massachusetts courts have been reluctant to interfere in controversies that are exclusively or primarily of an ecclesiastical nature. United Kosher Butcher's Ass’n. v. Associated Synagogues of Greater Boston, Inc., 349 Mass. 595 (1965). Churches and clergymen are, however, not entirely immune from judicial scrutiny. See Alberts, supra at 75 (the religion clauses of the First Amendment neither preclude the imposition of liability on a minister nor bar a court from inquiring into a church’s proceedings). The crucial issue is whether the defendants’ decisions and failure to act in response to allegations that O’Donoghue and Inzerillo had sexually molested Gagne are ecclesiastical in nature.
The defendants’ depositions established that the sexual molestation of children is “a serious evil” and is wholly contrary to the teachings and religious canons of the Roman Catholic Church. See Deposition of Bishop Harrington at page 85 and Deposition of O’Donoghue at page 19. Given that the allegations made against O’Donoghue asserted conduct substantively incongruous with church doctrine, Bishop Flanagan’s and Bishop Harrington’s failure to suspend O’Donoghue’s priestly duties or impose stricter supervision over him cannot, in logic, be deemed a decision by them grounded on religious beliefs, deserving of deference and entitled to constitutional protection. Compare Madsen v. Erwin, 395 Mass. 715, 722-23 (1985) (decision to fire homosexual employee deemed religious where affidavits showed that homosexuality is a deviation from Church’s standard of sexual morality). Accordingly, the defendants’ motion for summary judgment is denied as to Counts IX, XVI, XXX, and XXXVII.
O’Donoghue argues that the negligence claim against him is violative of the First Amendment. Madsen, however, has blocked that argument by observing that a clergyman’s tortious conduct “remains subject to regulation for the protection of society.” Id., supra at 727. The court will not afford constitutional protection to such alleged behavior under the guise that it constituted ecclesiastical conduct. Summary judgment is denied as to Count I.
ORDER
For the foregoing reasons it is hereby ORDERED that the motion to dismiss or in the affirmative for summary judgment of Defendants, O’Donoghue, Bishop Flanagan, Bishop Harrington, and the Worces *506 ter Diocese, is ALLOWED as to Counts V, VI, VIII, X, XV, XVII, XXIX, XXXI, XXXVI, and XXXVIII and DENIED as to Counts I, II, III, IV, VI, IX, XI, XII, XIII, XTV, XVI, XXVIII, XXX, XXXII, XXXIII, XXXIV, XXXV, XXXVI, and XXXIX.

Although defendant O’Donoghue and defendants Bishop Flanagan, Bishop Harrington, and the Diocese filed separate motions, the court will, for convenience sake, treat the several motions as a joint motion. Defendant Inzerillo has not sought pre-trial relief.

G.L.c. 260, §4C provides in relevant part:
Actions for assault and battery alleging the defendant sexually abused a minor shall be commenced within three years of the acts alleged to have caused an injury or condition or within three years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by said act, whichever period expires later; provided, however, that the time limit for commencement of an action under this section is tolled for a child until the child reaches eighteen years of age.

Other jurisdictions have refused to recognize claims for clergy malpractice because of fears that courts and juries would become excessively entangled with religion in establishing standards of care based on beliefs of different denominations. See, e.g., Schmidt v. Bishop, 779 F.Supp. 321 (S.D.N.Y. 1991); Greene v. Roy, 604 So.2d 1359 (La.App. 1992); White v. Blackburn, 787 P.2d 1315 (Utah App. 1990).

This ruling tracks the court’s decision in Yerrick v. Kelley, Civil No. 9517172, 4 Mass. L. Rptr. 599 (Worcester Super.Ct. December 1995).