Kottmyer, J.

BACKGROUND

This is an action which arises out of the alleged sexual abuse of plaintiffs, John Doe (“Doe”) and Richard Roe (“Roe”), by Paul Braco, Sr. (“Braco”), the deceased Pastor of the Parkway Christian Center (the “Church”). In Counts I and II,[2] Roe and Doe allege that defendants Gordon J. Mercer (“G. Mercer”), David G. Mercer (“D. Mercer"), Gary D. Leenhouts (“Leenhouts”), Wayne Shirk (“Shirk”) and Lynn G. Braco (“L. Braco”) were negligent when they failed to take steps which would have resulted in the removal of Braco from his position as Pastor. Plaintiffs Jane Doe and Mary Roe assert derivative claims for loss of parental consortium (Counts V and VI). Defendants now move for Summary Judgment. For the reasons *44 set forth below, defendants’ motion is ALLOWED as to all defendants except Gordon J. Mercer and DENIED as to Gordon J. Mercer.

SUMMARY JUDGMENT RECORD

The undisputed facts and disputed facts, viewed in the light most favorable to the plaintiffs, are as follows.

Governance of the Church

The Church is a charitable organization organized under G.L.c. 180. As provided in the Constitution and by-laws of the Church, the Pastor is “the spiritual overseer of the Church” who directs “all of its activities in consultation with the Council of Pastors and Elders” (the “Council").[3] He is the President and Chairman of the Council. The Constitution further provides that the Council of Elders shall “have control of all property, real or chattel, under direction of the Church” and shall “serve in an advisory capacity to the Senior Pastor, in the examination of applicants for Church membership and in the administration of discipline.” The Council has authority to call Special Meetings of the Church and to declare any office vacant by majority vote for “any good and sufficient cause.” The Church operates a middle school, the Parkway Academy.

Chronology of Alleged Abuse and Disclosures

From January 1983 until his death in 1996, Paul Braco was Pastor of the Church. In 1983, J.H., who was approximately thirteen years old, told his parents that Braco had touched him in the genital area at a church picnic. His father called G. Mercer, then a Deacon and member of the Council, and told G. Mercer that P. Braco had touched his thirteen-year-old son inappropriately while they were swimming. Braco then called the father and stated that the allegation was “ridiculous.” Also in 1983, and apparently after the same or a similar Church picnic, a second boy (“Kevin Koe”), then fourteen years old, told his parents that P. Braco had touched his genitals at the picnic. The Koes called P. Braco and arranged to meet with him. When the Koes arrived, they were met by G. Mercer; P. Braco was not present. G. Mercer told the Koes that he was there to hear what they had to say. Keven Koe told Mercer that P. Braco had put his hands on his genital area when they were in the water. G. Mercer questioned Kevin Koe who said: “I know that he touched me, and I know where he touched me.” G. Mercer said that P. Braco was a new pastor who had just come from New York, that Braco was “horsing around” and “it could have been a mistake.” He said: “Let’s forgive, he’s new, let’s give him a chance.” He also told the Koes that he did not “want this information to get out to other members of the congregation.” A few days later, Koe’s parents met with P. Braco and G. Mercer. P. Braco said, “I was horsing around, I may have grabbed him there by accident. I was acting like a kid myself, throwing them in the water.” G. Mercer did not tell anyone, including other members of the Council, about these complaints. Neither the H.’s nor the Koes pursued the matter further.
Beginning in the fall of 1986, Braco sexually abused Doe, who was eleven years old when the abuse began and a student at the Parkway Academy, two to three times a week. This alleged sexual abuse occurred in a variety of locations including, but not limited to, Braco’s home, the Parkway Academy and Braco’s truck. The abuse ended in the fall of 1992 when Doe was seventeen years old. In the summer of 1987, Braco allegedly sexually abused Roe on three separate occasions. Roe was fourteen years old at the time of the abuse and also a student at the Parkway Academy.
In 1988, L. Braco observed that her husband’s intake of alcohol increased and that he was engaging in what she characterized as “binge drinking.” In 1989, Braco and L. Braco met with members of the Council, including G. Mercer and D. Mercer, and disclosed that Braco had been consuming alcohol. In May 1989, the Council sent Braco to the City of Faith, a Christian counseling facility in Oklahoma, for treatment.
In 1989, while Braco was in treatment, J.R., a former member of the Church, contacted Shirk, an associate pastor at the Church, and reported that he had engaged in consensual sexual relations with Braco. At the time the sexual relationship was initiated by Braco, J.R. was nineteen years old. J.R. also authored a letter stating that he and Braco had engaged in consensual sexual acts. L. Braco saw this letter. While Braco was in treatment, L. Braco informed G. Mercer about the letter from J.R..
In June 1989, D. Mercer and G. Mercer attended a meeting with J.R. and his therapist, Sharon Stamper Thompson (“Thompson"), during which they discussed the alleged sexual relationship between J.R. and Braco. Thompson referred to Braco as a “professional pedophile” during this meeting. Thompson’s characterization of Braco as a pedophile was based upon the circumstances under which he initiated the relationship with J.R. and her opinion that, despite being an adult, J.R. was emotionally immature and physically small and “presented more like a boy than a man.”
In July 1989, Braco returned to the Church as Pastor. In 1992, when Doe was approximately seventeen years old, Braco stopped sexually abusing him. Braco also apologized to Doe for the abuse, and stated that what he had done was wrong.
Braco died in 1996. In June 1997, Paul Braco, Jr., Braco’s son, publicly revealed that Braco had sexually abused him.
Plaintiffs filed their Complaint on November 17, 1997.

The Defendants and Their Positions in the Church

D. Mercer became a member of the Church and Trustee in 1985. He was also a member of the Council. *45 He was not compensated for this position. From March 1991 through January 1998, he served as an associate pastor and was compensated by the Church. From January 1998 through July 1998, he served as Church Administrator and received compensation. D. Mercer was also licensed as an independent clinical social worker in about 1981.[4] In 1989, D. Mercer learned that Braco had been abusing alcohol. In 1989, D. Mercer learned of Braco’s sexual relationship with J.R., and attended the meeting at which Thompson described Braco as a “professional pedophile.”
G. Mercer was an officer and member of the Council from “well before” 1987 through 1997. He received no compensation for his services as a member of the Council. In 1990, he received compensation for several hours of counseling and miscellaneous work he performed for the Church as an independent contractor. From October 1993 through December 1993, he was compensated for serving as the Dean of the Church Bible School. G. Mercer had also been a probation officer and, as a probation officer, had dealt with the issue of sexual abuse. G. Mercer was also a licensed social worker between 1982 and 1989. In 1983, complaints were made to G. Mercer, as Deacon, that Braco had sexually touched two boys, thirteen and fourteen years of age, at a Church picnic or picnics. In 1989, G. Mercer knew that Braco was abusing alcohol, had engaged in a sexual relationship with J.R., and had been described by Thompson as a “professional pedophile.”
Leenhouts joined the Church in March 1987. He served, and was compensated as an associate pastor from March 1987 through 1992. Leenhouts had knowledge that Braco had an alcohol problem after 1988. The record is devoid of evidence that Leenhouts had knowledge of any alleged sexual misconduct by Braco.
Shirk joined the Church in 1983. He served and was compensated as an associate pastor starting in 1983. Shirk had knowledge, in 1989, of the sexual relationship between J.R. and Braco. The record is devoid of evidence that Shirk had any knowledge of any allegation that Braco had sexually abused a child or children.
L. Braco was a paid co-pastor from 1983.[5] L. Braco became aware that her husband had an alcohol problem in 1988. In 1989, L. Braco also had knowledge of Braco’s sexual relationship with J.R., and Thompson’s characterization of Braco as a “professional pedophile.” On several occasions when John Doe was abused in the Bracos’ home, L. Braco was in the house, in another room.
Timeliness of the Cause of Action
The Plaintiffs commenced this action on November 17, 1997. Accordingly, the relevant inquiry is whether either Doe or Roe knew or should have discovered at any time before November 1994, that any of their emotional or psychological problems were causally related to the sexual abuse. At that time, Doe was nineteen years old and Roe was twenty-one years old. Doe was born on December 29, 1974 and turned eighteen on December 29, 1992. Roe was born on May 9, 1973 and turned eighteen on May 9, 1991. Doe alleges that Braco abused him on numerous occasions beginning in 1986 when he was eleven years old. Roe alleges that Braco abused him on three separate occasions beginning in June of 1987 when he was fourteen years old. Both plaintiffs trusted Braco and viewed him as a father figure. Braco told them that the sexual activity was normal and that he engaged in the same conduct with his own son.
Roe saw counselors for behavioral problems in 1989, but did not tell them about any abuse. Roe did not tell anyone about the abuse because he thought the abuse was a "private thing.” Even during Roe’s college years he did not understand that Braco’s behavior was improper, nor did he think that Braco’s conduct constituted rape.
Doe believed that Braco loved him and knew at that time “that he would never do anything to hurt [him].” Doe had nightmares about the abuse between 1990 and 1994 when he was in high school. He wanted to tell others about the abuse, but was afraid “if it was wrong, then Pastor would go to jail and the Church would close down because of me.” (Emphasis added.) In 1991 or 1992, Braco told Doe that the abuse was wrong and apologized to Doe.
During the summer of 1997, Braco’s son, Paul Braco Jr. (“Paul Jr.”), disclosed that he had been sexually abused by his father. Paul Jr. ’s disclosure and descriptions of Braco’s conduct as sexual abuse caused Doe and Roe to evaluate Braco’s sexual conduct with them in a new light. Thereafter, the Plaintiffs disclosed the fact that they had been abused by Braco. Until then, neither Plaintiff had told anyone about the abuse. Neither had made a causal connection between the abuse and emotional and behavioral problems they had experienced. Both disclosed the abuse to counselors in 1997.

DISCUSSION

Summary Judgment Standard

This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by either submitting affirmative evidence negating an essential element of the nonmoving *46 party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

The Existence of a Duty

In a negligence action, a plaintiff must prove that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the breach was the direct and proximate cause of the plaintiffs injuries. Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). The existence of a duty is typically a question of law, not of fact; to be determined by reference to existing social values and customs and appropriate social policy. Yakubowizc v. Paramount Pictures Corp., 404 Mass. 624 (1989); Display Fireworks, Inc. v. Andover, 388 Mass. 153, 156 (1983). Carrier v. Riddell, Inc., 721 F.2d 867, 868 (1st Cir. 1983); Federal Express Corp. v. State Dept. of Transp., 664 F.2d 830, 835 (1st Cir. 1981); W. Prosser, Handbook of the Law of Torts, §37 at 206 (4th ed. 1971).
Generally one does not have a duty to protect another from a third person’s wrongdoing. Irwin v. Ware, 392 Mass. 745, 756-57 (1984). Under Massachusetts law, a special relationship may give rise to a duty to protect against the acts of a third party in limited situations, based either on responsibilities imposed by statute or common law (or both).[6] A special relationship, when derived from common law, is predicated on a plaintiffs reasonable expectations and reliance that a defendant will anticipate harmful acts of third persons and take appropriate measures to protect the plaintiff from harm. Irwin v. Ware, supra, 392 Mass. at 756; Fund v. Hotel Lenox of Boston, Inc., 418 Mass. 191, 192 (1994); Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983); Kane v. Fields Corner Grille, Inc., 341 Mass. 640, 641 (1961). “As the harm which safely may be considered foreseeable to the defendant changes with the evolving expectations of a maturing society, so change the ‘special relationships’ upon which the common law will base tort liability for failure to take affirmative action with reasonable care.” Irwin v. Ware, supra, 392 Mass. at 757.
Plaintiffs contend that all defendants had a special relationship to plaintiffs which gave rise to a duty to protect them from Braco’s actions. To establish a duty, the plaintiffs are required to prove that Braco’s conduct was foreseeable to the defendant in question. "While several different categories of . . . special relationships are recognized in the common law, they are based to a large extent oh a uniform set of considerations. Foremost among these is whether a defendant reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so.” Irwin v. Ware, supra, 392 Mass. at 756. See also Foley v. Boston Housing Authority, 407 Mass. 640, 645 (1990) (BHA had no duty to protect one employee against the attack of another employee where there was, “no showing in the record ... of a pattern of incidents involving employees, that reasonably would put the BHA on notice that [the plaintiff] could be the target of an attack by another employee”). Accord, Prosser and Keeton The Law of Torts, §56 at 385 (5th ed. 1984) (there is no liability where defendant neither knows nor has reason to foresee the danger or otherwise to know precautions are called for).
Under traditional tort principles, “the consideration of breach of duty will involve an integrated assessment of the degree of the risk and severity of potential harm and the likelihood injury will occur absent reasonable precautions.” O.L. v. E.L., 62 S.W.2d 469, 477 (Mo.App. 2001). “(F)oreseeability is not to be measured by what is more probable than not, but includes . whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct.” Id. at 476-77, citing 3 Harper, James and Gray, The Law of Torts, 18.2 at 657-59 (2d ed. 1986). See G.E.T. ex rel. T.T. v. Barron, 4 S.W.3d 622, 624-25, n.l (Mo.App. 1999) (“The test is not the balance of probabilities, but of the existence of some probability of sufficient moment to induce the reasonable person to take precautions”).
The evidence in the summary judgment record is sufficient to raise a question of fact as to whether G. Mercer reasonably could have anticipated that Braco would sexually abuse children in the congregation to whom he had access by virtue of his position as Pastor and that he (G. Mercer) would be expected to take appropriate action to protect the plaintiffs and could anticipate harm to plaintiffs from his failure to do so. See C.J.C. v. Corporation of Catholic Bishop, 985 P.2d 262, 273-77 (Wash. 1999).[7]
In 1983, G. Mercer was informed about the alleged sexual touching of two young boys at a Church picnic or picnics. G. Mercer was a member of the Council. But, on this record, it is not necessary to decide whether knowledge of allegations of abuse on the part of a member of the Council, by itself, would support a finding that G. Mercer had a duty to act. G. Mercer held himself out as a representative of the Church with responsibility and authority to address such complaints by meeting with Koe’s parents to discuss the matter. Moreover, he did not tell J.H.’s parents that he was not the appropriate person to receive such complaints. Compare Mullins v. Pine Manor College, supra, 389 Mass. at 52-53 (a duty voluntarily assumed must be performed with due care); Restatement (Second) of Torts §323 (1965). G. Mercer did not report the allegations to any other member of the Council and he asked the Koes not to share the information with other members of the Church. He did not attempt to monitor or limit Braco’s interactions with children or otherwise take steps to safeguard children in the Church community.
Whether the risk of harm to Doe and Roe reasonably should have been foreseen by G. Mercer before the *47 harm occurred and whether there was a causal relationship between G. Mercer’s failure to act and the sexual abuse of Doe and Roe are questions of fact to be determined by a jury. Compare Copithorne v. Framingham Union Hosp., 401 Mass. 860 (1988). In Copithorne, the Court discussed the issue of foreseeability in the context of causation holding that foreseeability was a question of fact where a defendant hospital had actual notice of three prior incidents involving allegations that a doctor had sexually assaulted a patient, but continued his staff privileges. The fact that the alleged abuse of the plaintiff did not occur in the hospital was not determinative.[8]
In contrast, the evidence is clearly insufficient as a matter of law to create an issue of fact as to whether defendants D. Mercer, Leenhouts, Shirk and L. Braco reasonably could have foreseen that P. Braco would sexually abuse children. First, there is no evidence that any of them had knowledge of any allegation of sexual abuse of a child by Braco predating the abuse of Doe and Roe. Starting in 1989, [9]all defendants had knowledge that Braco had been abusing alcohol. However, the abuse of alcohol does not render the sexual abuse of children foreseeable.[10] In 1989, D. Mercer and L. Braco also had knowledge of Braco’s relationship with J.R., and Thompson’s characterization of Braco as a “professional pedophile.” But J.R. was an adult at the time of the sexual relationship, there was no allegation that the relationship was not consensual and Thompson’s opinion was based solely on the circumstances of Braco’s relationship with J.R.. A consensual sexual relationship with an adult male does not render the sexual abuse of children foreseeable. See O.L. v. E.L., 625 S.W.3d at 479, n. 1.
Plaintiffs further contend that L. Braco had a special relationship with plaintiffs by virtue of her status as Braco’s wife. Under Massachusetts law, a family member does not have a duty to protect third persons from the criminal acts of other family members in the absence of knowledge that would lead a reasonable family member to anticipate danger. See Anthony H. v. John G., 415 Mass. 196, 200-01 (1993) (finding of negligence against mother and aunt who lived with individual who abused minor during sleepovers reversed). See also Andrade v. Babtiste, 411 Mass. 560 (1992) (wife’s knowledge that her husband stored an assault weapon at home, had a drinking problem, and had assaulted her on several occasions did not give rise to a duty to protect the plaintiff from intentional criminal conduct of her husband).
Plaintiffs have produced no evidence that L. Braco was aware, either before or during the alleged sexual abuse of plaintiffs, of any allegation that Braco was abusing or had sexually abused a child.[11] The fact that L. Braco is alleged to have been in the same house while incidents of abuse occurred does not provide a basis for imposing liability. Moreover, as discussed above, knowledge that Braco had engaged in homosexual conduct with an adult male, albeit one who was young in appearance, and the knowledge that he was consuming alcohol is insufficient, as a matter of law, to give rise to a duty on the part of L. Braco to anticipate and protect third parties from sexual abuse.

Absent Valid Claims by Doe and Roe, Mary Doe and Jane Roe's Loss of Consortium Claims Fail as a Matter of Law.

' Plaintiffs Jane Doe and Mary Roe allege that as a direct result of the defendants’ negligence they have suffered a loss of parental consortium. However, while a claim for loss of consortium is a separate claim from that of the individual seeking compensation, a prerequisite of the consortium claim is that the injured party have a valid claim. Sena v. Commonwealth, 417 Mass. 250, 264(1994). See also, Agis v. Howard Johnson Co., 371 Mass. 140 (1976). Because neither John Doe nor Richard Roe has a viable negligence claim against D. Mercer, Shirk, Leenhouts and L. Braco, the loss of consortium claims against them fail as a matter of law.
Statute of Limitations
G.L.c. 260, §4C states in relevant part that actions for assault and battery alleging the defendant sexually abused a minor, “shall be commenced within three years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by said act.” Generally, the question when a plaintiff knew or should have known of a cause of action is one of fact to be decided by a jury. Riley v. Presnell, 409 Mass. 239, 240 (1991).
Where a defendant raises the statute of limitations, the court must determine if a material question of fact exists as to whether the plaintiff had: (1) knowledge or sufficient notice that [he] was harmed; and (2) knowledge or sufficient notice of what the cause of harm was. Bowen v. Eli Lilly & Co., Inc., 408 Mass. 204, 208 (1990). See Phinney v. Morgan, 39 Mass.App.Ct. 202, 208-09 (1995) (summary judgment record revealed victim had sufficient knowledge of harm and the cause thereof where the victim discussed bringing a lawsuit, acknowledged experiencing emotional distress and had run away from home three times). Compare Ross v. Garabedian, 433 Mass. 360, 365-66 (2001) (knowledge that behavior was wrong and shameful, together with persistent psychological and emotional problems, including problems functioning sexually, insufficient to trigger the statute of limitations). The reasonable person who serves as the standard for the evaluation is “a reasonable person in the position of the plaintiffs,” i.e., one who has been subjected to the same conduct. Riley v. Presnell, supra, 409 Mass. at 245-46.
The plaintiffs have adduced evidence that Roe, and, for some time, Doe, thought the abuse was normal because they trusted Braco who was their Pastor and did not believe that he would hurt them or do anything wrong, they viewed him as a father figure and Braco *48 told them that he engaged In sexual conduct with his son. Although Roe received counselling for behavioral problems, his history of problems is far less extensive than that of the plaintiff in Ross v. Garabedian, supra, 433 Mass. at 365-67. Both plaintiffs were still young adults at the time of their disclosures and both describe Paul Jr.’s disclosure of his father’s abuse of him as a triggering event. In the context of the relationship between Braco and Doe and Roe, in which Braco was both religious adviser and father figure, and the fact that neither Doe nor Roe disclosed the abuse to anyone before Paul Jr.’s disclosures in 1997, the questions whether either Doe and/or Roe should have realized that he had suffered any appreciable or legally recognized harm and that the harm was causally related to the abuse are material questions of fact which preclude summary judgment.

Charitable Immunity

G. Mercer argues that he is immune from liability under G.L.c. 231, §85W.
Absent unequivocal direction requiring retroactivity, civil statutes which affect substantive rights are commonly treated as operating prospectively. Const. Pt. I, Art. 24; Vittands v. Sudduth, 41 Mass.App.Ct. 515, 518-20 (1996). The Legislature enacted G.L.c. 231, §85W on July 23, 1987.[12] It became effective ninety days later on October 21, 1987. Section 85W works a substantive change in the law. It does not protect G. Mercer from liability where the abuse of Doe began in 1986 and that of Roe in May or June of 1987.

CONCLUSION

For the reasons stated above, it is hereby ORDERED that Counts III and IV are dismissed for failure to state a claim. Further, Defendants’ motion for summary judgment is ALLOWED on all remaining claims as to all defendants except Gordon J. Mercer. The motion for summary judgment is denied as to Counts I, II, V and VI against Gordon J. Mercer.

Counts III and IV of the Complaint allege that defendants breached their “pastoral duty” to plaintiffs Roe and Doe. Massachusetts law recognizes no such duly separate and apart from a generalized duty of care. See Gagne v. O’Donoghue, 5 Mass. L. Rptr. 501, 1996 WL 1185145 (Mass.Super. 1996) (“Although particular standards of care have been held to exist for other professions, such as . . . physicians and attorneys, Massachusetts has not recognized actionable standards with respect to clergy"). Plaintiffs’ claims for breach of “pastoral duly” are dismissed for failure to state a claim.

The Council was previously called the “Board of Deacons” and the “Board of Deacons and Elders.”

As licensed social workers, D. Mercer and G. Mercer were mandated reporters pursuant to G.L.c. 119, §51A. This provision requires that certain professionals, including clinical social workers, serving in a professional capacity, file a report where they have “reasonable cause to believe that a child under the age of eighteen years is suffering physical or emotional injury resulting from abuse inflicted upon him which causes harm or substantial risk of harm to the child’s health or welfare, including sexual abuse ...”

In an application submitted to the District Superintendent of the Church, L. Braco stated that she had been a co-pastor with her husband starting in 1983. Additionally, she acknowledges that she received compensation from the Church, but states that the money constituted earnings of her husband diverted to her so that her husband would continue to qualify for disability payments.

A second exception to the general rule of nonliability is recognized when one individual, l.e., an employer, has the ability to control the actions of another individual, the employee. See Foley v. Boston Housing Authority, 407 Mass. 640 (1990). Here, the only defendants who arguably had any authority to control Braco’s conduct were the defendants who served on the Council, D. Mercer and G. Mercer.

In C.J.C., the Court held that the conjunction of the following four factors might be found to give rise to a duty on the part of the Church and one of its Elders: 1) the special relationship between the Church and the alleged.abuser, a Deacon; 2) the special relationship between the Church and the children in the congregation; 3) the Elder’s knowledge of a prior allegation of abuse; and 4) the alleged causal connection between the Deacon’s position in the Church and the resulting harm.

In Coplthorne, the Court found that the hospital had a duty to the plaintiff, an employee of the hospital who, in selecting the doctor, reasonably relied on the doctor's good standing and reputation within the hospital community.

The abuse of Roe terminated in the summer of 1987. Knowledge acquired by a defendant in 1989 is therefore irrelevant to Roe's claim.

The fact that use of alcohol and/or a homosexual relationship with J.R. violated church policy has no bearing on the foreseeability of Braco’s alleged sexual abuse of Doe and Roe. Moreover, defendants’ failure to act on knowledge of these violations of Chinch policy by removing Braco from office was not in any sense a legal cause of the abuse. Although hierarchal structure and lines of authority in a given church are relevant to the determination whether a duty exists, the policies and beliefs of an individual church can neither create nor negate the existence of a legally enforceable duty. See Alberts v. Devine, 395 Mass. 59, 73 (1985); Leary v. Geoghan, 2000 WL 1473579 (McHugh, J. 2000).

Plaintiffs point to references in the record to L. Braco's knowledge of an allegation by a boyfriend of her daughter that Braco had abused him in New York before coming to Massachusetts in 1983. The record is clear that L. Braco learned of this allegation in 1994. Although plaintiffs point to evidence of a second alleged victim in New York, there is no evidence in this record of any knowledge by L. Braco of a such an allegation before the abuse of Doe terminated in 1992.

G.L.c. 231, §85W provides in relevant part: “No person who serves without compensation, other than reimbursement for actual expenses, as an officer, director or trustee of any nonprofit charitable organization including those corporations qualified under 26 U.S.C. Section 501(c)(3) shall be liable for any civil damages as a result of any acts or omission relating solely to the performance of his duties as an officer, director or trustee; provided, however, that the immunity conferred by this Section shall not apply to any acts or omissions intentionally designed to harm or to any grossly negligent acts or omissions which result in harm to the person.”